UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
DIVISION OF SHREVEPORT

| | | |
|---|---|---|
| ARCHIE DIGGS, INDIVIDUALLY, LATONYA BECKNELL FLOWERS, AND CALVIN DIGGS, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF ANNIE LEE BECKNELL (D) | * * * * * * | CIVIL ACTION NO. CV 21 -_____ |
| | | JUDGE _____ |
| V. | * | |
| IRVING PLACE ASSOCIATES, LP D/B/A HIGHLAND PLACE REHAB & NURSING CENTER, JAMES ANDREWS, AND ANGELA HAYES | | MAGISTRATE JUDGE _____ |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**NOTICE OF REMOVAL**

COME NOW, Defendants, IRVING PLACE ASSOCIATES, LP D/B/A HIGHLAND PLACE AND REHAB NURSING CENTER ("Highland") and ANGELA HAYES ("Hayes") (together, "Defendants"), through undersigned counsel, who hereby remove this action from the First Judicial District Court of Caddo Parish, Louisiana, to the United States District Court for the Western District of Louisiana, reserving all defenses and reserving all objections to venue based on 42 U.S.C.A. § 247d-6d(e)(1), pursuant to 28 U.S.C.A. §§ 1331, 1367, 1441 and 1446 on the following grounds:

I. **STATEMENT OF THE CASE**

1.

This action was filed in the First Judicial District Court of Caddo Parish, Louisiana as Civil Action No. 630074-C on April 29, 2021. (*See* Exhibit A, Citation and Petition for Damages).

2.

Defendant, Hayes, was served on July 7, 2021 with the Citation and Petition for Damages.  (*See* Exhibit B, Service Return for Hayes).  Defendant, Highland, was served on July 14, 2021.  (*See* Exhibit C, Service Return for Highland).  Accordingly, this Notice of Removal is timely. 28 U.S.C.A. § 1446(b).[1]

3.

The Petition for Damages asserts causes of action for wrongful death resulting from negligence,  gross negligence, and deviations from the standard of care by a covered person in the administration of a covered countermeasure under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d(d), 247d-6e (West 2020).

4.

More specifically, plaintiffs, Archie Diggs, LaTonya Becknell Flowers, and Calvin Diggs ("Plaintiffs"), claim Highland and Hayes deviated from and/or breached its promise to provide professional care to Annie Becknell and breached and/or ignored the guidelines and recommendations of the WHO, CDC, Louisiana Department of Health (LDH), and common sense guidelines for taking care of elderly patients in a nursing home setting during these times.  More specifically, Plaintiffs' allegations include Highland's use and administration of COVID-19 tests and Highland's policies and procedures related to monitoring, sanitizing and, otherwise, preventing the spread of COVID-19. (*See* Exhibit A, Citation and Petition for Damages, ¶¶ 10, 12, 14).  All which caused Annie Becknell to be exposed to the novel coronavirus, and ultimately to contract the respiratory disease commonly known as COVID-19.  Plaintiffs further alleged that as a consequence of Annie

---

[1]To date, James Andrews has not been served.

Becknell being exposed to the COVID-19 virus, she became seriously ill and died on May 2, 2020.  (*See* Exhibit A, Citation and Petition for Damages, ¶¶ 7, 8).

## II.  <u>PROCEDURAL REQUIREMENTS</u>

### 5.

This notice is filed on behalf Defendants and with their explicit consent pursuant to 28 U.S.C.A. § 1446(b)(2)(A).    Mr. Andrews has not been properly served, and as such, his consent is not now needed.  28 U.S.C.A. § 1446(b)(2)(A).

### 6.

Concurrent with the filing of this Notice or promptly thereafter, Defendants are serving this Notice of Removal on all adverse parties pursuant to 28 U.S.C.A. § 1446(d).

### 7.

Pursuant to 28 U.S.C.A. § 1446(a), copies of all state court documents served upon or provided to Defendants are attached as follows:

| Exhibit | Description |
|---------|-------------|
| A | Citation and Petition for Damages |
| B | Service Return for Angela Hayes |
| C | Service Return for Highland |

### 8.

As of July 20, 2021, there have been no orders issued by the First Judicial District Court, Caddo Parish, Louisiana.

### 9.

Removal to this venue is proper because the First Judicial District Court, Caddo Parish, Louisiana lies within the jurisdictional boundary of the Western District of

Louisiana.  However, Defendants reserve the all rights to contest venue as improper under 42 U.S.C. § 247d-6d(e)(1).

### III.  ARGUMENT AND CITATION TO AUTHORITY

### A.  Federal Question Jurisdiction Under 28 U.S.C.A. § 1441(a)

10.

This case is removable under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because Plaintiffs' Petition for Damages asserts a claim that falls within the purview of the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e  (the "PREP Act") and the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020), 85 Fed. Reg. 52136 (Aug. 24, 2020), 85 Fed. Reg. 79190 (Dec. 9, 2020), 86 Fed. Reg. 7872 (Feb. 2, 2021), 86 Fed. Reg. 9516 (Feb. 16, 2021) as corrected by 86 Fed. Reg. 10588 (Feb. 22, 2021), and 86 Fed. Reg. 14462 (Mar. 16, 2021) (herein, "the Declaration"). Therefore, the Petition asserts a claim "arising under" federal law within the meaning of § 1331.

11.

Although the Petition for Damages does not, on its face, rely upon any provision of federal law, federal question jurisdiction is proper under the doctrine of "complete preemption." The PREP Act meets the criteria for complete preemption by broadly preempting all state law claims within its ambit and by providing an exclusive set of federal remedies.

12.

Federal question jurisdiction is also proper under the "substantial federal question" doctrine because the Petition for Damages sets forth causes of action that necessarily turn on disputed questions of federal law and removal would further the congressionally-mandated division of state and federal interests under the PREP Act. Pursuant to its authority under the PREP Act, HHS has declared that any claim falling within the PREP Act presents a "substantial federal question" and is therefore removable. See 85 Fed. Reg. 79190.

13.

Here, Plaintiffs' Petition for Damages falls under the PREP Act because it asserts a claim for loss "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." Therefore, federal question jurisdiction exists over the claim.

1.    **The Doctrine of "Complete Preemption" Applies to Any Claim Preempted Under the PREP Act Because the PREP Act (1) Expressly Preempts State Law Claims for Loss, and (2) Provides an Exclusive Set of Federal Remedies**

14.

Plaintiffs' claim is removable under federal question jurisdiction because the PREP Act simultaneously preempts Plaintiffs' claim and provides an exclusive federal cause of action for all such claims.

15.

The issue of whether federal question jurisdiction exists when a Complaint asserts a claim in state law is addressed in *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003). The Court explained:

> [A] state claim may be removed to federal court ... when a federal statute wholly displaces the state-law cause of action through **complete pre-emption.** When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. In the two categories of cases where this Court has found complete pre-emption ... the federal statutes at issue **provided the exclusive cause of action** for the claim asserted and also **set forth procedures and remedies governing that cause of action.**

*Id.* at 8 (emphasis supplied; internal citations and footnotes omitted).

16.

There, the plaintiff brought an action for usury under state law, which was preempted by the usury provisions of the National Bank Act (12 U.S.C. §§ 85 and 86). The Court held that the usury provisions under §§ 85 and 86 collectively "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive." *Beneficial Nat. Bank*, *supra*, at 11. Therefore, the court held that federal question diversity was proper under the "complete preemption" doctrine.

17.

The doctrine of complete preemption is distinguishable from the various types of "ordinary" (or "defensive") preemption-such as express, field, and conflict preemption-in that it provides federal removal jurisdiction. *See, e.g., Elam*, 635 F.3d at 803 (5th Cir. 2011); *Devon*, 693 F.3d at 1204 (10th Cir. 2012); *Retail Prop. Tr. v. United Broth. of Carpenters and Joiners of Am.*, 768 F3d 938, 948-49 (9th Cir 2014). It is also distinguishable from situations where congress expressly provides for removal jurisdiction within the preemptive federal statute. *See Beneficial Nat. Bank*, 539 U.S. at 8 (2003) (discussing the Price-Anderson Act, which contained an express removal provision). The focus of the complete preemption

analysis is on the framework of the relevant federal statute as an indication of an implicit

congressional intent to permit removal.  *See Beneficial Nat. Bank*, 539 U.S. at 8 (2003).

18.

Since *Beneficial* was decided, the doctrine of "complete preemption" has been

applied by the lower courts to at least ten other statutes[2].  Circuit and district courts

considering the issue have found "complete preemption" where a federal statute (1)

expressly preempts state law and (2) creates an exclusive federal remedy for preempted

state claims. *See, e.g., In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005); *Spear*

*Marketing, Inc. v. Bancorp South Bank*, 791 F.3d 586 (5th Cir. 2015); *Nott v. Aetna U.S.*

*Healthcare, Inc.*, 303 F.Supp.2d 565 (E.D.Pa. 2004).

19.

The PREP Act satisfies both prongs of this analysis. First, the PREP Act preempts

state law to the extent that it would deprive an individual or entity of the immunity it

confers. Under 42 U.S.C. § 247d-6d(a)(1), a "covered person" is afforded broad immunity

"from suit and liability under Federal and State law" for "all claims for loss caused by,

arising out of, relating to, or resulting from" the "administration" or "use" of a "covered

---

[2]These include the Transportation Safety and System Stabilization Act (*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005)); the Bankruptcy Code (*In re Miles*, 430 F.3d 1083 (9th Cir. 2005)); the Carmack Amendment to the Interstate Commerce Act (*see, e.g., Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011)); the Interstate Commerce Commission Termination Act (*see, e.g., Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796 (5th Cir. 2011)); the Copyright Act (*see, e.g., Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015)); the Federal Communications Act (*see, e.g., Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000)); the Federal Deposit Insurance Act (*Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009)); the Federal Railroad Safety Act (*see, e.g., Lundeen v. Canadian Pacific R. Co.*, 532 F.3d 682 (8th Cir. 2008)); the National Labor Relations Act (*see, e.g., Price v. Union Local 25*, 787 F. Supp. 2d 63 (D.D.C. 2011)); and the Securities Litigation Uniform Standards Act (SLUSA) (*see, e.g., Brockway v. Evergreen Intern. Trust*, 496 Fed. Appx. 357 (4th Cir. 2012)).

countermeasure" if the Secretary of the Department of Health and Human Services issues a declaration to that effect-which it has.  Moreover, under 42 U.S.C. § 247d-6d(b)(8), state law that "is different from, or in conflict with, any requirement applicable under this section [§ 247d-6d] and relates to ... the administration by qualified persons of the covered countermeasure" is expressly preempted. This language would include enforcement of a tort claim in a state court system.  Therefore, under the Declaration, the PREP Act broadly preempts a wide array of state law claims.

20.

Second, the PREP Act establishes an exclusive federal cause of action for any claim preempted, and also establishes the procedures applicable to such actions. Under 42 U.S.C. § 247d-6d(d)(1) "the sole exception to the immunity from suit and liability of covered persons ... shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." Claims for "willful misconduct" are subject to several heightened pleading requirements. § 247d-6d(e)(1)-(4). Moreover, any action for "willful misconduct" "shall be filed and maintained only in the United States District Court for the District of Columbia," and must be brought before a three-judge panel. § 247d-6d(e)(1), (e)(5). The PREP Act also establishes a host of other procedural requirements for such claims, including limitations on damages and limited discovery rights.  *See generally* § 247d-6d(e).

21.

The PREP Act also establishes a no-fault compensation program for some injured claimants called the "Covered Countermeasure Process Fund" ("CCPF"). § 247d-6e. That program is administered at the discretion of the Secretary of Health and Human Services. §

247d-6e(b)(4). Since 2011, the Secretary established the "Covered Injury Compensation Program" ("CICP") to administer such benefits. *See generally* 76 Fed. Reg. 62306 (Oct. 7, 2011) (final rule establishing the CICP). Under § 247d-6e, an individual is permitted to claim no-fault benefits through the CCPF/CICP for a "covered injury directly caused by the administration or use of a covered countermeasure." In fact, even a claimant alleging "willful misconduct" must first apply for benefits through the Fund under § 247d-6e before bringing an action in the District of Columbia under § 247d-6d(d). § 247d-6e(d)(1).

22.

However, the no-fault benefit process is not a cause of action, and it does not require the participation of a would-be defendant, or "covered person." Therefore, a claim for "willful misconduct" under § 247d-6d(d) is the sole and exclusive cause of action that can be asserted in any court in the United States of America between a claimant and a defendant for any claim falling under the PREP Act.

23.

On January 8, 2021, HHS issued an Advisory Opinion expressly stating that the PREP Act triggers the doctrine of "complete preemption," including in claims of negligent infection control within an adult care facility. HHS, Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision (Jan. 8, 2021).

24.

Since the onset of the COVID-19 pandemic, several district courts have addressed whether the PREP Act is the type of statute that triggers complete preemption. To date, two district courts have recognized that the PREP Act triggers complete preemption. *See Garcia v. Welltower OpCo Group, LLC*, No. 8:20-cv-02250 (C.D. Cal. Feb. 10, 2021); *Rachel v.*

*Natchitoches Nursing & Reab. Ctr.*, No. 1:21-cv-334, at N.3 (W.D.L.A. Apr. 30, 2021). Both of these cases involve allegations of improper infection control within an adult care facility.

25.

In *Garcia*, the plaintiff alleged that the defendant facility negligently failed to prevent the spread of COVID-19, resulting in death to the plaintiff's decedent. *Garcia*, at 2-3. In denying the plaintiff's motion to remand, the *Garcia* court recognized that the PREP Act provided "sweeping immunity" from suit and liability under federal and state law while providing a trade-off of "exclusive" remedies. *Id.* at 5, 6. The court then recognized the various authorities issued by HHS addressing the scope of the PREP Act in response to the very district court orders that the plaintiff had cited to in support of remand. *Id.* at 10, *citing Chevron, Inc. v. NDRC, Inc.*, 467 U.S. 837, 843 (1984), *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and *United States v. Mead Corp.*, 533 U.S. 218, 220 (2001); *id.* at 11 ("OGC affirmed that the PREP Act is a complete preemption statute and clarified the scope of the Act relative to the ongoing pandemic."), *citing* Advisory Opinion 21-01 ; *see also id.* at n. 3 ("*Chevron* is not black and white, and the Supreme Court has made clear that courts are not faced with an option of complete deference or none at all.").

26.

The *Garcia* court therefore concluded that in light of the recent authority from HHS:

> [O]nly instances of nonfeasance, i.e., where "defendant's culpability is the result of its failure to make any decisions whatsoever, thereby abandoning its duty to act as a program planner or other covered person" would complete preemption not attach. Total inaction, therefore, would not be covered by the PREP Act.

*Id.* at 11 (*citing* Advisory Opinion 21-01).

27.

The *Garcia* court acknowledged that its holding deviated from prior orders granting remand, but explained that those orders were issued **before** Advisory Opinion 21-01 clarified the scope of PREP Act immunity.  *Garcia*, 8:20-cv-02250-JVS-KESx at 9-10. Likewise, the court rejected the holdings of the *Dupervil* court (addressed below) and other district courts that issued remand orders after Advisory Opinion 21-01, but which declined to follow that Opinion.  *Id.* at 10, n. 2.

28.

In *Rachal*, which involved similar allegations to those at issue in *Garcia* and almost verbatim allegations to the case herein, the court concluded that the PREP Act satisfied all criteria for complete preemption because it (1) contained a civil enforcement provision that replaces and protects an analogous area of state law; (2) contained a specific jurisdictional grant to the federal courts to enforce the same; and (3) contained a clear congressional intent that such jurisdiction would be exclusive. It also found the PREP Act particularly analogous to the ATSSSA because both statutes (1) create an administrative no-fault compensation fund; (2) provide broad immunity from suit for certain entities/individuals; (3) create an exclusive federal cause of action for certain residual claims; and (4) confer exclusive jurisdiction over such causes of action unto a specified federal venue. *Rachal*, at n. 3, *citing In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005).

29.

The *Rachal* court also observed that the distribution of PPE within an adult care facility (such PPE is provided for and is the foundation of any COVID-19 infection control program) constituted administration of a covered countermeasure under the PREP Act. It

reasoned that HHS, in Advisory Opinion 21-01, "took a broad view of the applicability of the PREP Act as it relates to claims against nursing homes and other healthcare providers for failing to provide sufficient personal protective equipment ("PPE") or adequate training on the use of PPE [and] rejected the position adopted by some courts that if a covered countermeasure were not used, then there is no PREP Act immunity." *Rachal* at 11. Accordingly, it concluded that, consistent with the OGC's Opinion, only the complete "failure to make any decisions whatsoever" would bring a claim of non-administration outside of the scope of complete preemption under the PREP Act. *Id.*

30.

In contrast to *Garcia* and *Rachal*, several other district courts have granted remand of cases removed under the PREP Act. Defendants submit that these remands were made in error for the reasons set forth below.

31.

First, several of the remand decisions pre-dated the more recent authority from HHS stating that the PREP Act triggers complete preemption. *See, e.g., Maglioli v. Andover Subacute Rehab. Ctr.*, No. 20-6605 (D.N.J. Aug. 12, 2020); *Baskin v. Big Blue Healthcare*, No. 2:20-cv-2267 (D.Ka Aug. 19, 2020); *Sherod v. Comp. Healthcare Mgmt. Servs.,* No. 2:20-cv-01198 (W.D.Pa Oct. 16, 2020). Therefore, these decisions did not consider HHS's broad interpretation of the PREP Act expressed in Advisory Opinion 21-01.

32.

Second, many remand decisions were predicated on a false interpretation of the PREP Act that it does not cover claims of inaction surrounding covered countermeasures. *See e.g., Maglioli v. Andover Subacute Rehab. Ctr.*, No. 20-6605 (D.N.J. Aug. 12, 2020); *Baskin*

*v. Big Blue Healthcare*, No. 2:20-cv-2267 (D.Ka Aug. 19, 2020). However, this line of reasoning neglects the broad "caused by, arising out of, relating to, or resulting from" language of the PREP Act and the broad definition of "administration" that applies to decision-making, fails to appreciate the nature of "notice pleading," and threatens to render the PREP Act's immunity from "suit" meaningless in most contexts. Under this construction, the PREP Act would only shield a defendant from suit if the plaintiff expressly alleges in the initial pleadings that the injury was directly caused by a covered countermeasure, even though most plaintiffs would never draft their pleadings in such a manner.

33.

Third, several courts have erroneously concluded that the doctrine of "complete preemption" does not apply if a federal statute provides for an "administrative" remedy. *See Dupervil v. Alliance Health Ops.*, No. 1:20-cv-04042 (E.D.N.Y. Feb. 2, 2021); *McCalebb v. AG Lynwood*, No. 2:20-cv-09746 (C.D.Ca Mar 1, 2021). For example, in *Dupervil*, the court analogized the PREP Act to the Railway Labor Act ("RLA"), which has been held to not trigger complete preemption, on the theory that both statutes provided for administrative benefits instead of a federal cause of action. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276 (2d Cir. 2005); *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1245 (9th Cir. 2009).

34.

However, the administrative benefit under the RLA is an internal dispute resolution process similar to arbitration, not an exclusive federal cause of action. *See Moore-Thomas*, 553 F.3d at 1245 (9th Cir. 2009) ("the RLA does not provide an exclusive federal cause of

action"). In contrast, the PREP Act makes clear that the exclusive remedy against a covered person is a federal cause of action for "willful misconduct" as defined by that statute. The CICP is unlike the internal dispute resolution process under the RLA because it is not a dispute resolution mechanism-it is simply a no-fault compensation program, and the covered person is not involved in a claimant's application for benefits. Thus, the reasoning of *Sullivan* and *Moore-Thomas* is inapplicable to the PREP Act because even though a plaintiff bringing a claim for "willful misconduct" must first apply for benefits through the CICP, the PREP Act nevertheless provides that the exclusive procedure available to resolve a claim against the covered person is a federal cause of action for "willful misconduct," which must be brought in federal court. The RLA contains no similar requirement. Therefore, the *Dupervil* court and its progeny should not have relied on *Moore-Thomas* and *Sullivan* to reason that the PREP Act does not trigger complete preemption.

35.

Fourth, some courts have concluded that the PREP Act does not trigger complete preemption simply because it does not provide a substantively identical federal claim to replace the plaintiff's preempted state law negligence claim. *See, e.g., Sherod v. Comprehensive Healthcare Mgt. Services, LLC*, No. 20-c-v-1198, 2020 WL 6140474, at 5 (W.D.Pa Oct. 16, 2020); *Dupervil v. Alliance Health Ops.*, No. 1:20-cv-04042 (E.D.N.Y. Feb. 2, 2021); *McCalebb v. AG Lynwood*, No. 2:20-cv-09746 (C.D.Ca Mar 1, 2021). However, these courts overlook the fact that it is not the entitlement to federal relief that triggers complete preemption of a claim, but rather that the claim itself is preempted by a statute that also creates an exclusive federal cause of action. *See, e.g., Beneficial Nat. Bank*, 539 U.S. at 8 (2003) *Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311, 1314 (5th Cir 1994); *Cannon v. Group*

*Health Serv. of Oklahoma, Inc.*, 77 F.3d 1270, 1274 (10th Cir 1996). It is therefore entirely possible, albeit unfortunate, that a claimant can be left without a remedy after the application of the complete preemption doctrine. *See La Buhn v. Bulkmatic Transp. Co.*, 644 F. Supp. 942, 948 (N.D. Ill 1986) ("As is typical in these preemption cases, a removing defendant tows the case into the federal harbor only to try to sink it once it is in port.") aff'd 865 F.2d 119 (7th Cir. 1988).

36.

Fifth, several courts declined to afford *Chevron's* "controlling weight" deference to Advisory Opinion 21-01 because it was not a final agency action. *See, e.g., Dupervil v. Alliance Health Ops.*, No. 1:20-cv-04042 (E.D.N.Y. Feb. 2, 2021); *Stone v. Long Beach Healthcare Ctr.*, No. 2:21-cv-00326 (C.D.Ca Mar. 26, 2021). However, these courts did not address the fact that HHS had previously mandated that its Declaration and all amendments thereto be interpreted in light of its advisory opinions. *See* 85 Fed. Reg. 79195 (under the fourth amendment to the Declaration, the Secretary expressly provided that the Declaration itself "must be construed in accordance with the Advisory Opinions of the Office of the General Counsel.").

37.

Sixth, several courts declined to grant deference to Advisory Opinion 21-01 because they found that it was not "persuasive." *See, e.g., Dupervil v. Alliance Health Ops.*, No. 1:20-cv-04042 (E.D.N.Y. Feb. 2, 2021); *Stone v. Long Beach Healthcare Ctr.*, No. 2:21-cv-00326  at 8-9 (C.D.Ca Mar. 26, 2021). However, these courts simply relied on the erroneous application of the "complete preemption" doctrine set forth above, and thus were wrong to conclude that HHS's application of the doctrine was not persuasive.

Moreover, this dismissive approach to HHS's own administrative materials effectively amounts to no deference at all, even though HHS was expressly delegated the authority by congress to implement the PREP Act's protections and administer the statute in furtherance of its duty to lead the nation's public health emergency response in times of great crisis. *See Rachel v. Natchitoches Nursing & Rehab. Ctr.*, No. 1:21-cv-334, at N.3 (W.D.L.A. Apr. 30, 2021).

38.

Accordingly, the PREP Act meets both criteria for "complete preemption." It expressly preempts a wide array of state law tort claims. It also provides an exclusive federal cause of action for any claim preempted. Therefore, federal question jurisdiction exists over any claim falling under the preemptive purview of the PREP Act.

**2.      Any Claim Involving the Interpretation of the PREP Act is Removable Under the "Substantial Federal Question" Because HHS has Expressly Declared that the Application of the PREP Act is a "Substantial Federal Question"**

39.

Removal is also proper because Plaintiff's Petition for Damages presents a "substantial federal question." *See Gunn v. Minton*, 568 U.S. 251, 258 (2013) *citing Grable & Sons Metal Prods. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).

40.

In *Grable*, the Supreme Court set forth a two-step process for determining whether such a claim is removable: First, the state law claim must necessarily raise a federal issue, actually disputed and substantial. Second, federal courts must be able to entertain the state law claims, "without disturbing a congressionally approved balance of state and federal judicial responsibilities." *Id.* at 314. There, the Court held that a state law quiet title action

presented a substantial federal question and was therefore removable because the claim turned on the interpretation of a federal statute directing the manner of notice that is required for a sale of a property that had been seized to satisfy a federal tax delinquency. *Id*. at 314-315.  The Court explained:

> [I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Id*. at 312. (citations omitted).

41.

On December 9, 2020 HHS amended the Declaration to expressly provide that the PREP Act triggered the "substantial federal question" doctrine under *Grable*. 85 Fed. Reg. 79190 (Dec. 9, 2020).  In the Preamble to that amendment, the Secretary explains:

> The Secretary **makes explicit** in Section XI that **there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of** *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities...

85 Fed. Reg. at 79194 (emphasis supplied). Then, in Section XI, the Secretary formally declares:

> COVID-19 is a global challenge that requires a whole-of-nation response. **There are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of** *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, **545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities.** The world is facing an unprecedented pandemic. To effectively respond, **there must be a more consistent pathway** for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world. Thus, **there are substantial federal legal and policy issues, and**

**substantial federal legal and policy interests within the meaning of [*Grable*], in having a uniform interpretation of the PREP Act**. Under the PREP Act, the sole exception to the immunity from suit and liability of covered persons under the PREP Act is an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct by such covered person. In all other cases, an injured party's exclusive remedy is an administrative remedy under section 319F-4 of the PHS Act. **Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations.**

85 Fed. Reg. at 79197-98 (emphasis supplied), *citing* 42 U.S.C. § 247d-6d(b)(7).

42.

Thus, it is clear that the Secretary intended for removal jurisdiction to extend to any claim that involves the "interpretation of the PREP Act," in order to ensure a more uniform application of a statute that was integral to the Secretary's response to the COVID-19 pandemic.

43.

Notably, under the PREP Act, the language of this Declaration is to be conclusive on all issues regarding the invocation of the Act. *See* 42 U.S.C. § 247d-6d(b)(7) ("No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection."). At the very least, however, Section XI should be afforded *Chevron* controlling weight because it is an agency's interpretation of the very statute it is charged with administering, because congress has not spoken expressly on the issue, because it involves an area of knowledge within the expertise of the Secretary, and because it the Secretary's delegated authority to lead the nation's response to the COVID-19 pandemic. *See, e.g. Cuozzo Speed Tech., LLC v. Lee*, 136 S.Ct 2131, 2142 (2016) ("where a statute leaves a 'gap' or is 'ambigu[ous],' we

typically interpret it as granting the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute.") *citing U.S. v. Mead Corp.*, 533 U.S. 218, 229 (2001); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984).

44.

Finally, the Secretary revisited the issue of removal jurisdiction under the *Grable* doctrine in Advisory Opinion 21-01, and reinforced the plain meaning of Section XI of the fourth amendment to the Declaration. Specifically, Advisory Opinion 21-01 states:

> In addition to complete preemption as the basis for article III jurisdiction and removal, ... **ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court**.
>
> * * *
>
> **[T]he secretarial determination [made in the forth amendment to the Declaration] provides the underlying basis for invoking the *Grable* doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.** Once invoked, the court retains the case to decide whether the immunity and preemption provisions apply; if they do not apply, then the court would try the case as it would a diversity case. If the court finds, though, that the PREP Act applies, it would dismiss the case or if death or serious physical injury proximately caused by willful misconduct is alleged, transfer it to the District Court for the District of Columbia.

*Id.* at pp. 4-5 (emphasis supplied) *citing Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005); 85 Fed. Reg. at 79197;  42 U.S.C. § 247d-6d(b)(7).

45.

Therefore, any claim that implicates the PREP Act is removable under the fourth amendment to the Declaration and the subsequent authority issued by HHS, both of which expressly invoke the "substantial federal question" doctrine of *Grable*.

**3.      Plaintiffs' Claim Falls Under the PREP Act Because it "Relates to" the Administration and Use of Covered Countermeasures by a Covered Person.**

46.

Under the PREP Act, there is preemption of any state law cause of action against a covered person that asserts "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" if the Secretary of HHS issues a declaration to that effect. 42 U.S.C. § 247d-6d(a)(1). In response to COVID-19, the Secretary of HHS issued the Declaration, which provided immunity under the PREP Act to any "covered person" who engaged in any "recommended activities," including the "distribution, administration, and use" of "covered countermeasures." 85 Fed. Reg. 15201.

47.

The gravamen of Plaintiffs' claim is that the Defendants' actions taken in response to the COVID-19 pandemic were ineffective to prevent the spread of COVID-19 throughout the facility, causing Ms. Becknell to contract the disease. Because such a claim necessarily "relates to" and "arises out of" a covered person's "administration" and "use" of products as specifically identified by the Secretary of HHS meeting the definition of "covered countermeasures," it falls under the preemptive scope of the PREP Act and triggers removal jurisdiction.

*a.      Defendants are "Covered Persons" under the PREP Act*

48.

Under the PREP Act and HHS's Declaration, the phrase "covered person" includes: "'program planners,' 'qualified persons,' and their officials, agents, and employees"; any

person "authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction ... to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors"; "any person authorized to prescribe, administer, or dispense the Covered Countermeasures or who is otherwise authorized to perform an activity under an Emergency Use Authorization in accordance with Section 564 of the FD&C Act";  and "any person authorized to prescribe, administer, or dispense Covered Countermeasures in accordance with Section 564A of the FD&C Act." 85 Fed. Reg. at 15201-02.

49.

The phrase "qualified person" has a broad definition that includes any "licensed health professional or other individual who is authorized to prescribe, administer, or dispense [covered] countermeasures under [applicable state law]"; any "person [so] authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction ... and their officials, agents, employees, contractors and volunteers ..."; and any person so-authorized under an "Emergency Use Authorization in accordance with Section 564 of the FD&C Act" or "in accordance with Section 564A of the FD&C Act." 42 U.S.C. § 247d-6d(i)(8).  The phrase "Authority Having Jurisdiction," in turn, means the "public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical (e.g., city, county, tribal, state, or federal boundary lines) or functional (e.g., law enforcement, public health) range of sphere or authority." 85 Fed. Reg. at 15202. The term "distributor" is also broadly (and circuitously) defined as "a person or entity engaged in the distribution of drugs, biologics, or devices ...."  42 U.S.C. § 247d-6d(i)(3).

50.

Similarly, the phrase "program planner" is broadly defined as a person or entity who: "supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with [the Secretary's declaration]." 42 U.S.C. § 247d-6d(i)(6). The Preamble to the Declaration explains that a "private sector employer or community group or other 'person' can be a program planner when it carries out the described activities." 85 Fed. Reg. at 15202.

51.

Finally, the phrase "person," which is used repeatedly throughout these and other definitions, includes an "individual, partnership, corporation, association, entity, or public or private corporation ..." 42 U.S.C. § 247d-6d(i)(5).

52.

Notably, HHS has advised that senior living communities are "covered persons" under the PREP Act as both "qualified persons" and "program planners." *See* Charrow, Response Letter (Aug. 14, 2020) (Exhibit D). In its Response Letter, HHS states: "a senior living community meets the definition of a 'program planner' to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by 'provid[ing] a facility to administer or use a Covered Countermeasure in accordance with' the Declaration." *Id.* at 2. The Response Letter further

states that senior living communities would be "qualified persons" if they were authorized by a state or local public health official to administer or use covered countermeasures. *Id*. at n. 3.

53.

Here, Plaintiffs allege in the Petition for Damages that Highland was "licensed to do and doing business in the State of Louisiana" and that "[a]t all times relevant to these proceedings, [Highland] operate[d] a nursing rehabilitation facility" and "holds itself out as a long term care facility."  By alleging multiple failures, Plaintiffs have inferred that Defendants had an affirmative obligation to take affirmative measures to prevent the spread of COVID-19 or to "do all things necessary and proper in the circumstances to reduce the risk of Ms. Becknell being exposed to and contracting COVID-19", which specifically includes the use of testing, PPE administration through their infection control procedures; and sanitization of the facility.  *See* Petition for Damages ¶ 10, 12, 14. Therefore, Plaintiffs are effectively estopped from denying that Defendants were authorized under state law to administer or use covered countermeasures for that very purpose. As such, Defendants are "qualified persons" under the PREP Act.

54.

Moreover, as set forth in the Affidavit of Teresa Fisher, RN, the staff at Highland developed policies and procedures for the use and administration of various covered countermeasures for the purposes of infection control, as well as a facility to administer COVID-19 tests. (*See* Exhibit E).  This systematic administration and use of covered countermeasures is precisely the type of activity that the definition of "program planner" encompasses. Therefore, Defendants are "program planners" under the PREP Act.

Accordingly, Defendants are "covered persons" within the meaning of the PREP Act and the Declaration.

> ### b.   Plaintiffs' Claims Relate to "Covered Countermeasures" under the PREP Act

55.

As set forth in the Declaration, the term "covered countermeasure" is defined as follows:

> [(1)] **any** antiviral, **any** other drug, any biologic, **any** diagnostic, **any** respiratory protective device, **any other device**, or any vaccine, **used**
>
> > a.   **to treat, diagnose, cure, prevent, or mitigate COVID**-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, **or**
> >
> > b.   **to limit the harm that COVID-19**, or the transmission of SARS-CoV-2 or a virus mutating therefrom, **might otherwise cause**; or
>
> (2)  any device used in the administration of any such product, and all components and constituent materials of any such product.
>
> * * *
>
> [provided the product can also be classified as one or more of the following:] "qualified pandemic or epidemic products," or "security countermeasures," or drugs, biological products, or devices authorized for investigational or emergency use, as those terms are defined in the PREP Act, the FD&C Act, and the Public Health Service Act, or any respiratory protective device approved by NIOSH under 42 CFR part 84 ...

85 Fed. Reg. at 35102 (emphasis supplied); *see also* 42 U.S.C. § 247d-6d(i).

56.

The statutory definition of a "qualified pandemic or epidemic product" can be summarized as a "drug," "biological product," or "device," that is (1) used for COVID-19 or to limit the harm that COVID-19 might otherwise cause; and (2) any of the following: (a) approved, licensed, or cleared by FDA; (b) authorized under an Emergency Use

Authorization (EUA); (c) described in an Emergency Use Instruction (EUI); or (d) used under either an Investigational New Drug (IND) application or an Investigational Device Exemption (IDE). See HHS, Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration Under the Act, p. 4 (Apr. 17, 2020, as modified May 19, 2020) ("Advisory Opinion 20-01"); *see also* 42 U.S.C. § 247d-6d(i)(7).

57.

The statutory definition of "security countermeasure" can be summarized as any "drug, biological product, or device" that: (1) is used for COVID-19; and (2) is either: (a) determined by the Secretary to be a priority and necessary countermeasure, and approved under the FD&C Act, licensed under 42 U.S.C. § 262, or determined by the Secretary to be likely to qualify for approval or licensing within 10 years; or (b) authorized for emergency use under 21 U.S.C. §§ 360bbb-3. *See* 42 U.S.C. § 247d-6b(c)(1)(B).

58.

In addition, any NOISH-approved respiratory protective (such as an N-95 mask) device is a "covered countermeasure." *See* 85 Fed. Reg. 21012.

59.

Collectively, therefore, the term "covered countermeasure" includes any FDA-approved or cleared "drug," "biological product," or "device," or ***any such product covered by an EUA or EUI, or any NOISH-approved respiratory protective device, that is used or administered to treat, diagnose, cure, prevent, or mitigate COVID-19, or to limit the harm that COVID-19 might otherwise cause.***

60.

Thus, while the number of products meeting the definition of "covered countermeasures" are "too numerous to list," it includes (1) diagnostic products such as COVID-19 tests; (1) products used to reduce the spread of COVID-19, such as PPE, N-95 respirators, and hand sanitizers; (3) products used to monitor individuals with confirmed or suspected COVID-19, such as thermometers and pulse oximeters; and (4) drugs, devices, and therapeutics administered to individuals with confirmed or suspected COVID-19, such as supplemental oxygen. *See* Advisory Opinion 20-01;  21 CFR §§ 878.4040 (surgical apparel), 880.6250 (non-powdered patient examination gloves), 880.6256 (examination gowns); 21 CFR §§ 880.2200, 880.2900, 880.2910, 880.2920, 880.2930 (thermometers); 21 C.F.R. § 870.2700 (Pulse oximeters); 21 C.F.R. §§ 870.4100,  868.5340, 868.5570 (non-rebreather masks and nasal cannulas for administration of supplemental oxygen); 82 Fed. Reg. 60474 (final rule for health care antiseptic products); 84 Fed. Reg. 14847 (final rule for consumer antiseptic products); FDA Combating COVID-19 with Medical Devices, FDA  (listing Emergency Use Authorization for inter alia, COVID-19 test kits, certain types of PPE, respiratory protective devices, therapeutics, and drugs).

61.

Here, Plaintiffs' Petition for Damages places directly into issue Defendants' use and administration of many such products by alleging the "WHO emphatically urged healthcare facilities...to provide the appropriate level of necessary protection and medical care while developing strategies and protocol to keep COVID-19 from entering its facilities, identifying infections early; to take action to prevent spread; to assess current supply of Personal Protective Equipment (PPE), and initiate measures to optimize supply; to educate and train

its healthcare professionals about the new virus; and to quickly manage severe illness." *See* Petition, ¶ 6. Plaintiffs further claim the Defendants breached and/or ignored the guidelines and recommendations of the WHO, CDC, LDH, and common sense guidelines for taking care of elderly patients in a nursing home setting during these times. *Id* at ¶ 7.

62.

Therefore, Plaintiffs' vague allegations relating to infection control or lack thereof within the facility was negligent "relates to" products that meet the definition of "covered countermeasures" under the PREP Act and the Declaration.

### c. *Plaintiffs' Claims Relate to the "Administration" and "Use" of "Covered Countermeasures" under the PREP Act*

63.

Plaintiffs' claim places into issue *how* Defendants "administered" and "used" "covered countermeasures" for purposes of infection control. It therefore falls under the purview of the PREP Act because it "relates to" and "arises out of" the "administration" and use of covered countermeasures.

64.

The PREP Act applies to any claim for injury that is "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure ...." 42 U.S.C. § 247d-6d(a)(1). The Declaration, in turn, provides PREP Act immunity for all "recommended activities," which include the "use" or "administration" of covered countermeasures. 85 Fed. Reg. at 15201.

65.

The phrase "use" is not defined under the PREP Act. However, the phrase "administration" is actually defined within the Declaration itself, and that definition clearly extends beyond the physical provision of countermeasures to recipients:

> Administration ... means physical provision of the countermeasures to recipients, **or** activities and **decisions** directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, **management and operation of countermeasure programs**, or **management and operation of locations** for purpose of distributing and dispensing countermeasures.

85 Fed. Reg. 15202 (emphasis supplied). In the Preamble of the Declaration, the Secretary explains that this definition of "administration" even extends to "decisions" that are "related to" the management and operation of a countermeasure program or a location where countermeasures are being distributed:

> The definition of ''administration'' extends ... to activities **related to** management and operation of programs and locations for providing countermeasures to recipients, ....

> Thus, it is the Secretary's interpretation that, when a Declaration is in effect, the Act precludes, **for example**, liability claims alleging ... negligence by a health care provider in prescribing the wrong dose, absent willful misconduct ... [and to] a liability claim relating to the management and operation of a countermeasure distribution program or site, such as a slip-and-fall injury or vehicle collision by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, lax security or chaotic crowd control.

85 Fed. Reg. 15200 (emphasis supplied).

66.

Notably, HHS has also rejected the position adopted by some courts that the PREP Act does not apply to claims of negligent infection control that purport to allege a failure to act. Advisory Opinion 21-01, pp. 1-4. Specifically, HHS explained that the PREP Act covers

any claim that is "related to" the administration of covered countermeasures, and thus would apply unless the purported inaction was a "failure to make any decisions whatsoever." *Id.* at pp. 3-4.

67.

Here, Plaintiffs' claim "relates to" and "arises out of" Defendants' "use" and "administration" of covered countermeasures within the facility for purposes of infection control. While vague and ambiguous, the allegations of the Petition certainly relate to:  the manner in which Defendants used and distributed PPE within the facility to control the spread of COVID-19, the manner in which Defendants screened individuals for COVID-19 symptoms, the manner in which Defendants allocated resources in response to COVID-19, and the manner in which Defendants implemented a system for testing individuals for COVID-19.

68.

Plaintiffs do not allege specifically how Ms. Becknell was exposed to COVID-19. Rather, Plaintiffs merely allege that all of the infection control measures within the facility were deficient in preventing the spread of COVID-19, and that this caused injury. Therefore, Plaintiffs' Petition places into issue all activities Defendants took with respect to infection control within the facility.

69.

Therefore, Plaintiffs' claim "arises out of" and "relates to" Defendants' "administration" and "use" of "covered countermeasures, and falls within the scope of the PREP Act.

**B.**  **Exclusive Original Jurisdiction Under 42 U.S.C. § 247d-6d(e)(1)**

70.

Defendants maintain that Plaintiffs' pleadings do not assert any legally cognizable cause of action because the claim pleaded "relates to" and "arises out of" Defendants' "administration" and "use" of "covered countermeasures" for the purposes of infection control within the facility, and therefore fall under the preemptive purview of the PREP Act.

71.

However, Defendants further assert in the alternative that, to the extent Plaintiffs' pleadings are construed to assert any viable cause of action, the sole cause of action they could assert would be a claim for "willful misconduct" under the PREP Act. *See* 42 U.S.C. § 247d-6d(d)(1).

72.

Under the PREP Act, the District Court for the District of Columbia has exclusive jurisdiction for claims of "willful misconduct" brought under 42 U.S.C. § 247d-6d(e)(1), which states that "[a]ny action under [42 U.S.C. § 247d-6d(d)] shall be filed and maintained only in the United States District Court for the District of Columbia."

73.

Therefore, to the extent that the Petition asserts any cognizable cause of action, that cause of action raises a federal question over which the District Court for the District of Columbia has exclusive jurisdiction pursuant to an act of congress, and this matter is removable under § 247d-6d(e)(1).

74.

Notwithstanding, Defendants reserve all rights to contest the validity of any purported claim for "willful misconduct," including all procedural requirements, pleading requirements, and venue requirements set forth in § 247d-6d(e). Upon removal, Defendants intend to move for dismissal under the same and reserve the right to request transfer to the District Court for the District of Columbia.

### C.  Federal Officer Jurisdiction Under 28 U.S.C. § 1442

75.

Removal is permitted under 28 U.S.C. § 1442(a)(1) when a defendant is sued for actions taken at the direction of a Federal Officer. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def Ass'n of Phila*., 790 F.3d 457 (3rd Cir. 2015). This is to be broadly construed in favor of a federal forum. *Id.* at 467.

76.

Federal officer jurisdiction exists under § 1442(a)(1) if the following conditions are met: (1) the defendant it is a "person" within the meaning of the statute; (2) the claim is based upon defendant's conduct while "acting under" a federal officer; (3) a causal nexus exists between the claims and the conduct performed; and (4) a colorable federal defense is raised. *Jefferson County, Ala. v. Acker*, 527 US 423, 431 (1999);  *In re Commonwealth*, 790 F.3d at 467 (3rd Cir. 2015).

77.

The first requirement is met because Defendants are all either individuals or business entities, and thus meet the definition of "person." *See In re Commonwealth*, 790 F.3d at 467-68 (3rd Cir. 2015); 1 U.S.C. § 1.

78.

The "acting under" requirement is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012), *quoting Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007); *see also In re Commonwealth*, 790 F.3d at 468 (2015). To satisfy the "acting under" requirement, "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Watson*, 551 U.S. at 152.

79.

Federal courts "have explicitly rejected the notion that a defendant could only be "acting under" a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 813 (3d Cir. 2016). Instead, a specific instruction from a federal officer, or a detailed regulation to compel specific conduct satisfies the "acting under" requirement. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387 (5th Cir. 1998). "The hurdle erected by this requirement is quite low." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

80.

Also, unlike the tobacco industry at issue in *Watson v. Philip Morris Cos., Inc.*, the public health sector is a "critical infrastructure" within which the Federal Government works with owners and operators of healthcare-related facilities to promote national safety, especially during times of public health emergency. *See* Presidential Policy Directive-Critical Infrastructure Security and Resilience, The White House (Feb. 12, 2013)[3];

---

[3] *Available at*: https://obamawhitehouse.archives.gov/the-press-office/2013/02/12/presidential-policy-directive-critical-infrastructure-security-and-resil.

*see also Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 510620, 3 (ED Tex. Feb. 11, 2021)

(finding a defendant's designation as critical infrastructure sufficient for federal officer

jurisdiction where the defendant was, inter alia, closely monitored by federal agencies.).

81.

In response to the COVID-19 pandemic, many federal officers and agencies issued

detailed, regularly evolving guidance and regulations in order to facilitate a "whole of

nation" response to the declared public health emergency[4].   The Centers for Medicare and

Medicaid Services ("CMS") issued various protocols for COVID-19 testing, prioritization

and allocation of PPE, experimental treatments for COVID-19, and infection prevention and

control standards[5].  Similarly, the Centers for Disease Control ("CDC") issued a substantial

---

[4]

*See* CMS, Press Release "CMS Prepares Nation's Healthcare Facilities for Coronavirus Threat" (February 6, 2020) (available at https://www.cms.gov/newsroom/press-releases/cms pre-pares-nations-healthcare-facilities-coronavirus-threat); CMS Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (February 1, 2020) (available at https://emergency.cdc.gov/han/HAN00427.asp); CMS Guidance for Infection Control and Prevention Concerning Coronavirus (COVID-19): FAQ's and Considerations for Patient Triage, Placement and Hospital Discharge (March 4, 2020) (available at https://www.cms.gov/files/document/qso-20-13-hospitalspdf.pdf-2); CMS Guidance for use of Certain Industrial Respirators by Health Care Personnel (March 10, 2020) (available at https://www.cms.gov/files/document/qso-20-17-all.pdf); HHS, Emergency Use Declaration, Federal Register/ Vol. 85, No. 47 (March 10, 2020) (available at https://www.govinfo.gov/content/pkg/FR-2020-03-10/pdf/2020-04823.pdf); CMS Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes (Revised) (March 13, 2020) (available at https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf); CMS, COVID-19 Long-Term Care Facility Guidance (April 2, 2020) (available at https://www.cms.gov/files/document/4220-covid-19-long-term-care-facility-guidance.pdf); CMS, Press Release "Trump Administration Announces New Nursing Homes COVID-19 Transparency Effort" (April 19, 2020) (available at https://www.cms.gov/newsroom/press-releases/trump-administration-announces-new-nursing-homes-covid-19-transparency-effort).
[5]*See* CMS, Emergency Preparedness & Response Operations, Current Emergencies, *available at*: https://www.cms.gov/About-CMS/Agency-Information/Emergency/EPRO/Current-Emergencies/Current-Emergencies-page.

amount of guidance aimed at curbing the spread of COVID-19 throughout the nation[6].  Both CDC and CMS are subsidiaries of HHS, which is authorized under the Public Health Service Act to lead the nation's response to a public health emergency. *See* 42 U.S.C. § 247d, et seq. Accordingly, these guidelines created "strong government intervention" which went beyond the "mere auspices of federal direction" due to the unprecedented pandemic. *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N. D. Cal. 1992).

82.

Here, as members of the public health sector, Defendants were the primary targets of the guidance and regulations issued by CDC and CMS. Accordingly, they were "acting under" these federal agencies by taking efforts to comply with the same, thereby "assisting" CDC and CMS  "whole of nation" response.

83.

In addition, the Defendant facility is a skilled nursing facility subject to CMS regulation under 42 C.F.R. Part 483.  Accordingly, Defendants were directed to implement a system of identifying individuals with suspected or confirmed cases of COVID-19, and to submit periodic reports to the Secretary of HHS regarding the rates of COVID-19 infection and related details. *See* 42 C.F.R. 483.80 (81 Fed. Reg. 68868, Oct. 4, 2016, as amended at 85 Fed. Reg. 27627, May 8, 2020; 85 Fed. Reg. 54873, Sept. 2, 2020; 86 Fed. Reg. 26335, May 13, 2021).

84.

With respect to the "causal nexus" requirement, a defendant must "demonstrate that the acts for which they are being sued . . . occurred because of what they were asked to

---

[6]*See* CDC, Guidance Documents, *available at: https://www.cdc.gov/coronavirus/2019-ncov/communication/guidance-list.html?Sort=Date%3A%Adesc.*

do by the Government." *Isaacson*, 517 F.3d at 137 (2d Cir. 2008). In determining whether that causal connection exists, a court must take into account the defendant's theory of the case. *Id.*

85.

Here, as set forth on the face of the Petition, Plaintiffs' claim is causally related to Defendants' response to the COVID-19 pandemic and the efforts taken to control the spread of COVID-19 within the defendant facility. Those actions were undeniably the very subject of the large number of detailed guidance and regulations issued by the federal government that are addressed above. Therefore, the requisite causal connection is present.

86.

Finally, with respect to the "federal defense" requirement, the defense must be "colorable" and need not be "clearly sustainable" because the purpose for the removal statute is to ensure that the validity of the defense may be decided in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Here, for the reasons set forth above, Defendants assert that they have immunity from suit under the PREP Act, a federal statute. Therefore, this final requirement is plainly satisfied.

87.

Therefore, this court has federal officer jurisdiction pursuant to 28 U.S.C. § 1442, and removal is proper.

### D.  Supplemental Jurisdiction Under 28 U.S.C. § 1367

88.

When a case is removed based on federal question jurisdiction or federal officer jurisdiction, under 28 U.S.C. § 1367, a district court has supplemental jurisdiction "over all other claims that are so related ... that they form part of the same case or controversy."

89.

Here, all of the conduct alleged in the Petition arises from the same set of transactions and occurrences. Therefore, to the extent that any cause of action contained within the Petition does not fall within the federal question jurisdiction or the federal officer jurisdiction of the District Court as set forth above, Defendants request that the Court exercise its supplemental jurisdiction over such residual causes of action pursuant to 28 U.S.C. § 1367.

90.

Therefore, federal officer jurisdiction exists over the allegations in the Petition because they relate to Defendants' actions taken at the direction of a Federal Officer.

WHEREFORE, having shown that this case is properly removable, Defendants provide notice pursuant to 28 U.S.C. § 1446 that the Action pending the First Judicial District, Caddo Parish, Louisiana, Civil Action No. 630074-C is removed to the United States District Court for the Western District of Louisiana, and respectfully requests that this Court exercise jurisdiction over this case.

Respectfully submitted,

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**


By:     s/ *Sarah Spruill Couvillon*
         Brandon A. Sues (LA Bar #25517)
         Sarah Spruill Couvillon (LA Bar #30185)
         Connor C. Headrick (LA Bar #38265)
         2001 MacArthur Drive
         P. O. Box 6118
         Alexandria, LA  71307-6118
         Telephone: (318) 445-6471
         Facsimile: (318) 445-6476

**ATTORNEYS FOR DEFENDANTS, IRVING PLACE
ASSOCIATES, LP D/B/A HIGHLAND PLACE REHAB &
NURSING CENTER AND ANGELA HAYES**

STATE OF LOUISIANA

PARISH OF RAPIDES

BEFORE ME, the undersigned authority, personally came and appeared SARAH SPRUILL COUVILLON, who being first duly sworn, did depose and certify:  That she is the attorney of record for Irving Place Associates, L.P. d/b/a Highland Place Rehab and Nursing Center and Angela Hayes and that she has read the foregoing Defendants' Notice for Removal; that all defendants have consented and agreed to the removal; and that the facts and allegations therein contained are true and correct to the best of her knowledge, information and belief.

_s/ Sarah Spruill Couvillon_
SARAH SPRUILL COUVILLON

SWORN TO AND SUBSCRIBED before me, Notary, on this the 21st day of July, 2021.

_s/ Connor C. Headrick_ _____          Notary Public - Commission is for life
NOTARY SIGNATURE                              TITLE

_Connor C. Headrick_ _____            _156715_ _____
NOTARY NAME PRINTED                       NOTARY ID NUMBER

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Defendants' Notice for Removal has been sent to the following by placing a copy of same in the United States Mail, and to the Honorable Mike Spence, Clerk of the First Judicial District Court, Caddo Parish, Louisiana, with sufficient postage attached:

> Mr. Ronald J. Miciotto
> Mr. Holland J. Miciotto
> Attorneys at Law
> 628 Stone Avenue
> Shreveport, Louisiana 71101
>
> Mr. Robert E. Piper, Jr.
> Attorney at Law
> 1515 Poydras Street, Suite 1040
> New Orleans, Louisiana 70112

Alexandria, Louisiana this 21st day of July, 2021.

                    *s/ Sarah Spruill Couvillon*
                         Of Counsel