UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| ARCHIE DIGGS, LATONYA BECKNELL FLOWERS, AND CALVIN DIGGS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ANNIE LEE BECKNELL | * * * * * * | CIVIL ACTION NO. 5:21-CV-02127 |
| VERSUS | * * | JUDGE ELIZABETH E. FOOTE |
| IRVING PLACE ASSOCIATES, LP D/B/A HIGHLAND PLACE REHAB & NURSING CENTER, JAMES ANDREWS, AND ANGELA HAYES | * * * | MAGISTRATE JUDGE MARK L. HORNSBY |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, COMPEL ARBITRATION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Irving Place Associates, LP d/b/a Highland Place Rehab & Nursing Center and Angela Hayes ("Defendants") file this Motion to Dismiss or, Alternatively, Compel Arbitration.

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By:    /s/Sarah Spruill Couvillon
        Brandon A. Sues (LA Bar #25517)
        Sarah Spruill Couvillon (LA Bar #30185)
        Connor C. Headrick (LA Bar #38265)
        2001 MacArthur Drive
        P. O. Box 6118
        Alexandria, LA  71307-6118
        Telephone: (318) 445-6471
        Facsimile: (318) 445-6476
**ATTORNEYS FOR DEFENDANTS, IRVING PLACE ASSOCIATES, LP D/B/A HIGHLAND PLACE REHAB & NURSING CENTER AND ANGELA HAYES**

# TABLE OF CONTENTS

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL AND PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  LAW AND ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Legal Standard for Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    Rule 12(b)(1) – Lack of Subject–Matter Jurisdiction. . . . . . . . . . . . . . . 5

            2.    Rule 12(b)(6) – Failure to State a Claim. . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Defendants Are Immune from Liability per the PREP Act. . . . . . . . . . . . . . . . . 7

            1.    The PREP Act and Implementing Authorities. . . . . . . . . . . . . . . . . . . . . . 7

                  a.    The PREP Act Declaration and Amendments. . . . . . . . . . . . . . . . 7

                  b.    Advisory Opinions and Other Guidance. . . . . . . . . . . . . . . . . . . 10

                  c.    Judicial Opinions Addressing the Scope of the PREP Act. . . . . . 13

            2.    Plaintiffs' Claims are Preempted and Barred by PREP Act Immunity
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                  a.    The PREP Act applies because Defendants are "covered
                        persons". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                  b.    Plaintiffs   Plead   and   Defendants   were   Engaged   in
                        Recommended   Activities   by   Using   or   Administering
                        "Covered Countermeasures". . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                        i.    Testing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                        ii.   Personal Protective Equipment. . . . . . . . . . . . . . . . . . . . 23

                        iii.  Thermometers, Pulse Oximeters, Hand Sanitizers, and
                              Other Medical Devices.. . . . . . . . . . . . . . . . . . . . . . . . . . 24

c.    Plaintiffs' Claims Relate to and Arise Out of the "Administration" or "Use" of "Covered Countermeasures" During the Effective Period of the Declaration. . . . . . . . . . . . . 25

d.    Covered Countermeasures used in Skilled Nursing Facilities are Related to Federal Agreement and also Authorized by an Authority Having Jurisdiction under the Declaration. . . . . . . . . 28

C.    Plaintiffs Failed to Exhaust All Administrative Remedies Under the PREP Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D.    Any Claim Allegedly Arising from an Exception to PREP Immunity Must Be Dismissed for Lack of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

E.    Plaintiffs' Claims are Barred by Immunity per the LHEPA. . . . . . . . . . . . . . . . 32

F.    If the Court Determines That it is Necessary to Resolve Issues of Fact to Decide the Motion, Defendants Request a Hearing Under F.R.C.P. Rule 12(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

G.    If This Case is Not Dismissed, Discovery Should Be Limited to Whether Plaintiffs' Complaint Asserts a Claim Falling Within the PREP Act. . . . . . . . . . 34

H.    If This Case is Not Dismissed and Limited Discovery is Not Issued, Defendants Should Be Permitted to Seek Dismissal By Motion Upon the Conclusion of Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

I.    Alternatively, Plaintiffs' Claims Must Be Arbitrated. . . . . . . . . . . . . . . . . . . . . . 35

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

iii

## **TABLE OF AUTHORITIES**

### **CASES**

*Adams v. U.S. Capitol Police Bd.*, 564 F.Supp. 2d 37, 40 (D.D.C. 2008). . . . . . . . . . . . . . . 29, 30

*Aguillard v. Auction Management Corp.*, 04–2804, pp. 24–25 (La.6/29/05), 908 So.2d 1, 18. . . 36

*Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 176 (1st Cir 2016). . . . . . . . . . . . . . . 30

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Brown v. Big Blue Healthcare*, 480 F.Supp.3d 1196, (D.Ka 2020). . . . . . . . . . . . . . . . . . . . . . . . 14

*Casablanca v. Mount Sinai Med. Ctr.*, 2014 WL 10413521 (N.Y. Sup. Ct. 2014). . . 11, 13, 21, 27

*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984). . . . . . . . . . . . . . . . . . . . . . . . 13

*CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dupervil v. Alliance Health Ops.*, No. 1:20-cv-04042, 2021 WL 355137 (E.D.N.Y. Feb. 2,
   2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518 (D.N.J. 2020),
   (D.N.J. Aug. 12, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fernandez-Vargas v. Pfizer Pharm., Inc.*, 394 F.Supp 2d 407, 411 (D.P.R. 2005). . . . . . . . . . . . 30

*Garcia v. Welltower OpCo Group*, No. 8:20-cv-02250, 2021 WL 492581 (C.D.Ca Feb. 10,
   2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 16, 27

*Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). . . . . . 12

*Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000). . . . . . . . . . . . . . . . . . . 37

*Holt v. U.S.*, 46 F.3d 1000, 1002-1003 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Kehler v. Hood*, No. 4:11CV1416 FRB, 2012 WL 1945952 (E.D. Mo. May 30, 2012). . . . . . . . 13

*Lejeune v. Steck*, 13-1017 (La. App. 5 Cir. 5/21/14), 138 So. 3d 1280, 1283. . . . . . . . . . . . . . . . 32

*Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McCalebb v. AG Lynwood*, No. 2:20-cv-09746, 2021 WL 911951 (C.D. Cal Mar. 1, 2021). . . . 14

*McCarthy v Madigan*, 503 U.S. 140, 145 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Moreno v. Kansas City Steak Company*, LLC, 2017 WL 2985748, *3 (D. Kan. 2017). . . . . . . . . 6

*Morris v. McCarthy*, 825 F.3d 658, 666-67 (D.C. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). . . . . . . . . . . 36, 37

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . 6

*Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140 (N.Y. App. Div. 2012)13, 15, 30

*Pavey v. Conley*, 544 F3d 739, 742 (7th Cir 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Prasad v. Bullard*, 10-291 (La. App. 5 Cir. 10/12/10), 51 So. 3d 35, 39. . . . . . . . . . . . . . . . . . . . 36

*Rachal v. Natchitoches Nursing & Rehab. Ctr.*, No. 1:21-cv-334 (W.D.L.A. Apr. 30, 2021)
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 34

*Ross v Blake*, 136 S.Ct. 1850, 1857 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Ryan v. Glenn*, <u>336 F.Supp. 555</u> (D.C.Miss.1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Schuster v. Percheron Healthcare*, No. 4:21-cv-00156, <u>2021 WL 1222149</u> (N.D.Tx Apr. 1, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Colonial Care Ctr.*, No. 2:21-cv-00494, <u>2021 WL 1087284</u> (C.D.Ca Mar. 19, 2021). . 14

*Spector v. L Q Motor Inns, Inc.*, <u>517 F2d 278</u> (5th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Stone v. Long Beach Healthcare Ctr., LLC*, No. 21-326 (C.D.Cal. Mar. 26, 2021). . . . . . . . . . . 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, <u>551 U.S. 308, 327-28</u> (2007). . . . . . . . . . . . . . . . . 6

*United States ex rel. Winkelman v. CVS Caremark Corporation*, <u>827 F.3d 201, 208</u> (1ˢᵗ Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams v. Correction Officer Priatno*, <u>829 F.3d 118, 122</u> (2d Cir. 2016).. . . . . . . . . . . . . . . . 6

*Wright v. Encompass Health Rehab. Hosp. of Columbia*, No. 3:20-02636, <u>2021 WL 1177440</u> (D.S.C. Mar. 29, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

## STATUTES

<u>9 U.S.C. §§ 1-16</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

9. U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

<u>15 U.S.C.A. § 78u–4(b)(2)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>21 C.F.R. § 880.2200</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>21 C.F.R. § 880.2900</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>21 C.F.R. § 880.2910</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>21 C.F.R. § 880.2920</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>21 C.F.R. § 880.2930</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>21 C.F.R. § 868.5340</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>21 C.F.R. § 868.5570</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>21 C.F.R. § 870.2700</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>21 C.F.R. § 870.4100</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>21 C.F.R. § 878.4040</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>21 C.F.R. § 880.6250</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>21 C.F.R. § 880.6256</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

42 C.F.R. Part 483. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>42 U.S.C. §§ 247d-6d</u>, <u>247d-6e</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 29, 31

<u>42 U.S.C. § 247d-6d(a)(1)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7, 16, 25

<u>42 U.S.C. § 247d-6d(a)(2)(A)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>42 U.S.C. § 247d-6d(a)(2)(B)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 26

<u>42 U.S.C. § 247d-6d(b)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>42 U.S.C. § 247d-6d(b)(1)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

<u>42 U.S.C. § 247d-6d(b)(1)</u>, <u>(4)</u> & <u>(7)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>42 U.S.C. § 247d-6d(b)(8)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>42 U.S.C. § 247d-6d(b)(8)(A)</u>, <u>(1)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>42 U.S.C. § 247d-6d(c)(1)(A)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>42 U.S.C. § 247d-6d(c)(4)</u>, <u>(d)</u>, <u>(e)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

<u>42 U.S.C. § 247d-6d(i)(1)</u>,<u>(8)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>42 U.S.C. § 247d-6d(i)(3)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>42 U.S.C. § 247d-6d(i)(6)</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 247d-6d(i)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
42 U.S.C. § 247d-6e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31
42 U.S.C. § 247d-6(e)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
42 U.S.C. § 247d-6e(a), (b)(4), (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
42 U.S.C. § 247d-6e(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
42 U.S.C. § 247d-6d(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32
82 Fed. Reg. 60474 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
84 Fed. Reg. 14847 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
86 Fed. Reg. 7872 (Feb. 2, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10
86 Fed. Reg. 9516 (Feb. 16, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10, 29
86 Fed. Reg. 10588 (Feb. 22, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10
86 Fed. Reg. 14462 (Mar. 16, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9
86 Fed. Reg. 14468, N.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
85 Fed. Reg. 15198 (Mar. 17, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 19
85 Fed. Reg. 15200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26
85 Fed. Reg. 15201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 28
85 Fed. Reg. 15202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 22, 26, 28, 29
85 Fed. Reg. 21012 (Apr. 15, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8
85 Fed. Reg. 35100 (June 8, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9
85 Fed. Reg. 35102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21
85 Fed. Reg. 52136 (Aug. 24, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9
85 Fed. Reg. 79190 (Dec. 9, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9, 13, 31
85 Fed. Reg. 79194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27
La. C.C. Art. 3099 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
La. R.S. 9:4201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
La. R.S. 29:762(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
La. R.S. 29:771(2)(c)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
La. R.S. 29:771(B)(2)(c)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Proclamation No. 25 JBE 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32

## OTHER AUTHORITIES

Charrow, Robert, Letter to Thomas Baker, August 14, 2020. . . . . . . . . . . . . . . . . . . . . . . 11, 19
CDC, NIOSH-Approved Particulate Filtering Facepiece Respirators . . . . . . . . . . . . . . . . . . . . 24
CDC, Preparing for COVID-19 in Nursing Homes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
CDC, Strategies to Optimize the Supply of PPE and Equipment. . . . . . . . . . . . . . . . . . . . . . . 25
CDC, Using Personal Protective Equipment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
FDA Combating COVID-19 with Medical Devices, FDA. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
FDA, Coronavirus Disease 2019 (COVID-19) Emergency Use Authorizations for Medical
Devices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
FDA, In Vitro Diagnostics EUAs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
HHS Advisory Opinion 20-01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
HHS Advisory Opinion 20-02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
HHS Advisory Opinion 20-04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 22, 26, 29
HHS Advisory Opinion 21-01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 19, 23, 25, 26, 28

Office of the Assistant Secretary for Health, Guidance for PREP Act Coverage for COVID
    -19 Screening Tests at Nursing Homes, Assisted Living Facilities, Long-Term-
    Care Facilities, and other Congregate Facilities. . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 29
Pub. L. 116–136, div. A, title III, §?3103; 134 Stat. 361 (enacted Mar. 27, 2020). . . . . . . . . . . . 8
Wright & Miller, 5B Fed. Prac. & Proc. § 1350, Note 5 (3d ed.). . . . . . . . . . . . . . . . . . . . . . . . 30
Wright & Miller, 5B Fed. Prac. & Proc. § 1350, Note 6 (3d ed.). . . . . . . . . . . . . . . . . . . . . . . . 30
Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357, N76 (3d ed.). . . . . . . . . . . . . . . . . . . . . . 6
Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1373, Notes 11-15 (3d ed.). . . . . . . . . . . . . . . . 33

## **RULES**

F.R.C.P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 29
F.R.C.P. 12(b)(1)-(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
F.R.C.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 30, 31
F.R.C.P. 12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
F.R.C.P. Rule 12(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
F.R.C.P. Rule 12(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| ARCHIE DIGGS, LATONYA BECKNELL FLOWERS, AND CALVIN DIGGS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ANNIE LEE BECKNELL | * * * * * | CIVIL ACTION NO. 5:21-CV-02127 |
| VERSUS | * * | JUDGE ELIZABETH E. FOOTE |
| IRVING PLACE ASSOCIATES, LP D/B/A HIGHLAND PLACE REHAB & NURSING CENTER, JAMES ANDREWS, AND ANGELA HAYES | * * * * | MAGISTRATE JUDGE MARK L. HORNSBY |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' 12(B)(6) MOTION TO DISMISS OR, ALTERNATIVELY, COMPEL ARBITRATION

***May It Please the Court:***

Defendants, Irving Place Associates, LP d/b/a Highland Place Rehab and Nursing Center (hereinafter "Highland") and Angela Hayes (hereinafter "Hayes") (together, the "Defendants") are entitled to immunity from this claim pursuant to the Public Readiness and Emergency Preparedness Act ("PREP Act") and the Louisiana Emergency Health Powers Act ("LHEPA"). Alternatively, this Court should compel arbitration.

## I. INTRODUCTION

By March 2020, this nation was besieged by a global pandemic-a novel virus known as severe acute respiratory syndrome coronavirus (SARS-CoV-2) ("COVID-19") that had no known cure, therapeutic treatment, or vaccine.  In the past year, the World Health Organization (WHO), Centers for Disease Control and Prevention (CDC), the Department of Health and Human Services (HHS), and other public health authorities have issued continuously evolving recommendations,

1

guidance, and advice often changing daily and based on the science of the moment.  The sudden need for personal protective equipment ("PPE") and diagnostic testing resulted in nationwide shortages which significantly impacted the healthcare system. This naturally required providers like Highland to make a variety of granular decisions regarding the allocation and implementation of critical supplies to respond to the pandemic, mitigate the spread of the disease within the confines of its facility, and to the benefit of all staff and residents. Those decisions are the center of the plaintiffs' case.

It is now July of 2021, and the pandemic is ongoing and may even be resurging in Louisiana despite aggressive efforts by our government and health care community.  Globally, there have been more than 179 million confirmed cases of COVID-19.  In the United States, more than 33.5 million people have contracted the virus; more than 602,000 of those individuals have passed away as a result.  In Louisiana, there have been over 500,000 total cases of the virus, with approximately 10,900 people having passed away from the disease, and these numbers continue to rise today.

Cases have disproportionately impacted licensed skilled nursing facilities, like Highland, across the country.  Still, dedicated staff from these communities remain on the front lines of the pandemic, caring for residents suffering from sickness or advanced age, while also striving to shield them from the novel virus that can be passed from person-to-person even without sign or symptom.

The federal Public Readiness and Emergency Preparedness Act (PREP Act), 42 U.S.C. §§ 247d-6d, 247d-6e, provides immunity against the claims in the Petition for Damages.  The PREP Act provides immunity from "suit and liability under state and federal law" against any claim for loss "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." § 247d-6d(a)(1). The plain purpose of the PREP Act is

2

to facilitate a "whole of the nation" response to a health emergency, and to ensure that those responding are not discouraged from acting or forced to divert their effort and resources away from the emergency due to an influx of lawsuits. Thus, in response to the COVID-19 pandemic, the Secretary of HHS issued a declaration that granted immunity to individuals and entities responding to the pandemic.[1] This Declaration essentially invoked the entire scope of PREP Act authority, and broadly defined the term "covered countermeasure" to include "any" FDA-approved or authorized product used to prevent the spread of COVID-19, as well as any NOISH-approved respiratory protective device.  Here, the Petition asserts broad and vague allegations of negligence that place into issue all efforts taken by Defendants to prevent the spread of COVID-19 and that implicate a wide array of granular decisions involving the manner in which covered countermeasures were administered within Highland.  Such activities and decisions fall squarely within the scope of conduct that the PREP Act and the Declaration sought to protect from claims of civil liability.  Therefore, Plaintiffs' claims of negligent infection control are preempted by the PREP Act and must be dismissed.  Similarly, Plaintiffs' claims should be dismissed pursuant to the LHEPA.  To the extent that Plaintiff attempts to plead around this broad grant of immunity during a national public health emergency, it should not be accepted.

This Court can and should decide now, as a matter of law, that Defendants are immune from suit and liability under the PREP Act and/or LHEPA.  Delaying this determination until a later stage of the proceedings will only force health care providers to engage in expensive, disruptive, and protracted discovery, thus depriving them of the very protections the federal and/or

---

[1] Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020), 85 Fed. Reg. 52136 (Aug. 24, 2020), 85 Fed. Reg. 79190 (Dec. 9, 2020), 86 Fed. Reg. 7872 (Feb. 2, 2021), 86 Fed. Reg. 9516 (Feb. 16, 2021) as corrected by 86 Fed. Reg. 10588 (Feb. 22, 2021), and 86 Fed. Reg. 14462 (Mar. 16, 2021) (herein, "the Declaration").

state immunity is intended to provide.  Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' Petition for Damages under the PREP Act and LHEPA.  Alternatively, the Court should compel arbitration pursuant to the valid written arbitration agreement between the parties.

## II.   FACTUAL & PROCEDURAL BACKGROUND

The Petition for Damages ("Petition") asserts causes of action for wrongful death resulting from negligence, gross negligence, and deviations from the standard of care by a covered person in the administration of a covered countermeasure under the PREP Act.  Specifically, plaintiffs, Archie Diggs, LaTonya Becknell Flowers, and Clavin Diggs ("Plaintiffs"), claim Highland and Hayes deviated from and/or breached their promise to provide professional care to Annie Becknell and breached and/or ignored the guidelines and recommendations of the WHO, CDC, Louisiana Department of Health (LDH), and common sense guidelines for taking care of elderly patients in a nursing home setting during these times.  Plaintiffs' particular allegations include Highland's use and administration of COVID-19 tests and Highland's policies and procedures related to monitoring, sanitizing and, otherwise, preventing the spread of COVID-19. (*See* Ex. A, ¶¶ 10, 12, 14).  All of which allegedly caused Annie Becknell to be exposed to the novel coronavirus, and ultimately to contract the respiratory disease commonly known as COVID-19.  Plaintiffs further allege that as a consequence of Annie Becknell being exposed to the COVID-19 virus, she became seriously ill and died on May 2, 2020.  (*Id* at ¶¶ 7, 8).  Each of Plaintiffs' allegations clearly relate to Defendants' response to COVID-19, and as such are entitled to immunity under the PREP Act and/or LHEPA.

### III.   LAW & ARGUMENT

**A.   LEGAL STANDARD FOR MOTION TO DISMISS**

**1.   Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction**

Lack of subject-matter jurisdiction can be raised by two methods on a motion to dismiss: by facial attack, which concerns only the face of the pleadings, and by factual attack, which involves matters outside the pleadings. *See Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018).

If a factual attack is brought, the non-movant does not receive the presumption that the matters alleged in the Complaint are true, as would be afforded under a Rule 12(b)(6) motion. *Holt v. U.S.*, 46 F.3d 1000, 1002-1003 (10th Cir. 1995). Also, on a factual attack, the district court may analyze the issue under the summary judgment standard if the jurisdictional issue is intertwined with the merits of the case. *Croyle*, 908 F.3d at 380 (8th Cir. 2018); *see also* F.R.C.P. Rule 12(d).

**2.   Rule 12(b)(6) – Failure to State a Claim**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the allegations in the Complaint fail to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Id.* citing *Twombly*, 550 U.S. at 555–57 (2007). Legal conclusions and mixed questions of law and fact do not receive the presumption of truth even at the pleading stage. *Id.*; *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal).

When deciding a motion to dismiss under Rule 12(b)(6) a court may consider "matters of public record and facts susceptible to judicial notice" in addition to the four corners of the Complaint. *United States ex rel. Winkelman v. CVS Caremark Corporation*, 827 F.3d 201, 208 (1st Cir. 2016) (taking judicial notice of press release, news articles, CRS report, and record of congressional testimony); *see also* Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357, N1 (3d ed.) (collecting cases).

"[A] complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). Thus, Rule 12(b)(6) has been applied to dismiss cases on the basis of immunity (*See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (qualified immunity); *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (qualified immunity); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (official immunity); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357, N76 (3d ed.) (collecting cases).) and failure to exhaust administrative remedies (*See, e.g., Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (failure to exhaust under Prison Litigation Reform Act); *Morris v. McCarthy*, 825 F.3d 658, 666-67 (D.C. Cir. 2016) (wrongful termination); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357, N80.30 (3d ed.) (collecting cases); *contra Moreno v. Kansas City Steak Company*, LLC, 2017 WL 2985748, *3 (D. Kan. 2017) (failure to exhaust was jurisdictional defect, thus should be considered under F.R.C.P. § 12(b)(1)).

Dismissal under Rule 12(b)(6) is also proper if the complaint does not meet heightened pleading requirements imposed by statute. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327-28 (2007) (addressing heightened pleading requirements under 15 U.S.C.A. § 78u–

4(b)(2) requiring plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").

B.     **DEFENDANTS ARE IMMUNE FROM LIABILTY PER THE PREP ACT**

1.     **THE PREP ACT AND IMPLEMENTING AUTHORITIES**

By way of background, the PREP Act was first enacted on **December 30, 2005**, as Public Law 109-148, Division C, Section 2.  It amended the Public Health Service ("PHS") Act, adding Section 319F-3, which addresses liability immunity, and Section 319F-4, which creates a compensation program.  These sections are codified at 42 U.S.C. §§ 247d-6d and 42 U.S.C. 247d-6e, respectively.  The PREP Act provides broad immunity from suit and liability to any "covered person" with respect to all "claims for loss arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure" if a declaration has been issued with respect to that countermeasure. 42 U.S.C. § 247d-6d(a)(1).  The PREP Act states:

> [A] covered person ***shall be immune from suit and liability*** under Federal and State law with respect to claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(b)(1) (emphasis added).  "Loss" is broadly defined as "any type of loss," including death, physical injury, mental injury, emotional injury, fear, property loss and damage, and business interruption loss.  *Id*. § 247d-6d(a)(2)(A).  Moreover, the immunity applies to any claim "that has a causal relationship with the administration to or use by an individual of a covered countermeasure." *Id*. § 247d-6d(a)(2)(B).

a.     **The PREP Act Declaration and Amendments**

The powers and protections of the PREP Act lie dormant in the United States Code until the Secretary for HHS issues a Declaration identifying the scope and applicability of the Act in response to a unique public health emergency.  *See* § 247d-6d(b).  In this case, on **March 10, 2020**,

the Secretary of HHS issued the implementing Declaration invoking PREP Act immunity for "recommended activities" undertaken in response to the COVID-19 pandemic from **February 4, 2020** through **October 1, 2024**.[2]  Since its initial publication, the Declaration has been amended six times, both expanding the scope of immunity, and clarifying and emphasizing that the PREP Act is a complete preemption statute warranting federal jurisdiction.

First, on **April 10, 2020**, the Secretary expanded the definition of "covered countermeasures" to include "respiratory protective devices" that are approved by the National Institute for Occupational Safety and Health ("NIOSH")-approved.[3]  This amendment coincided with the passage of the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), which expanded the statutory definition of "covered countermeasure" under the PREP Act in the same manner.[4]

Second, on **June 4, 2020**, the Secretary amended the Declaration again to clarify that it was intended to use the full breadth of authority under the Act.[5]  Specifically, the definition of "covered countermeasure" was amended to include products that are used "to limit the harm that COVID-19 … might otherwise cause."[6]

---

[2] Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21012 (Apr. 15, 2020), 85 Fed. Reg. 35100 (June 8, 2020), 85 Fed. Reg. 52136 (Aug. 24, 2020), 85 Fed. Reg. 79190 (Dec. 9, 2020), 85 Fed. Reg. 7872 (Feb. 2, 2021, *corrected* Feb. 22, 2021), and 86 Fed. Reg. 9516 (Feb. 16, 2021, *corrected* Feb. 21, 2021) ("the Declaration").

[3] 85 Fed. Reg. 21012 (Apr. 15, 2020) (dated April 10, 2020; published April 15, 2020; retroactively effective as of March 27, 2020).

[4] Pub. L. 116–136, div. A, title III, § 3103; 134 Stat. 361 (enacted Mar. 27, 2020).

[5] 85 Fed. Reg. 35100 (Jun. 8, 2020) (dated June 4, 2020; published June 8, 2020; retroactively effective as of February 4, 2020).

[6] *Id.*  In the Preamble, the Secretary explained that the intent was to ensure that the full breadth of products meeting the definition of "qualified pandemic and epidemic products," which is a sub-category of "covered countermeasures," were afforded coverage under the Act.  This would include, for example, products meant to address side-effects of COVID-19 therapeutics, or residual effects of a COVID-19 infection, even if there is no active COVID-19 infection at the time of use.

8

Third, on **August 19, 2020**, the Secretary amended the Declaration to expand the "category of disease, health condition, or threat" to include "other diseases, health conditions, or threats, that may have been caused by COVID-19 ….."[7]

Fourth, on **December 3, 2020**, the Secretary made significant amendments to clarify that the Declaration *must* be construed in accordance with HHS's Advisory Opinions, which are discussed more fully below, and that such Advisory Opinions were incorporated into the Declaration by reference.[8]   The Secretary also incorporated other authorizations by HHS, made explicit that Section VI of the Declaration covers all qualified pandemic and epidemic products under the PREP Act, and added a third method of distribution to include private distribution channels.[9]   Importantly, **this** Amendment made explicit that there can be situations where *not* administering a covered countermeasure to a particular individual falls within the PREP Act and the Declaration's immunity provisions.[10]

Following the Fourth Amendment, and at the outset of the Biden Administration, the current secretary of HHS issued several more Declaration Amendments on January 28, 2021[11], February 11, 2021[12], and March 11, 2021[13].   None of those Amendments removed any rights

---

[7] 85 Fed. Reg 52136 (Aug. 24, 2020) (dated Aug. 19, 2020; published August 24, 2020; effective as of August 24, 2020).

[8] Fourth Amendment to the Declaration Under the PREP Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190 (Dec. 9, 2020) ("Fourth Amendment").

[9] *Id.*

[10] We note, this Amendment also reiterated that cases with allegations in this Complaint should be handled in the federal court system, or by the federal administrative compensation scheme, as there are substantial federal legal and policy issues and interests in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities.  *See id.*  As such, HHS has urged courts to recognize there is "exclusive federal jurisdiction" of COVID-19 actions.

[11] *See* 86 Fed. Reg. 7872 (Feb. 2, 2021) *as corrected by* 86 Fed. Reg. 10588 (Feb. 22, 2021) (dated Jan. 28, 2021; published Feb. 2, 2021; effective as of Feb. 2, 2021.).

[12] 86 Fed. Reg. 9516 (Feb. 16, 2021) *as corrected by* 86 Fed. Reg. 10588 (Feb. 22, 2021) (dated Feb. 11, 2021; published Feb. 16, 2021; effective as of Feb. 8, 2021).

[13] 86 Fed. Reg. 14462 (Mar. 16, 2021)(dated Mar. 11, 2021; effective Mar. 11, 2021).

9

afforded by the prior Amendments, and they further confirmed the broad nature of the PREP Act's application and the intent of the Act to be completely preemptive of Plaintiff's state law claims.

### b.   Advisory Opinions and Other Guidance

On **April 17, 2020**, the Office of the Secretary issued AO 20-01,[14] which provides, among other things, that an entity or individual who complies with all other requirements of the PREP Act will not lose PREP Act immunity – even if the person or entity is not a covered person, or the medical product is not actually a covered countermeasure – if that person reasonably could have believed that it was a covered person, or that the product was a covered countermeasure. *See id*. at 2. AO 20-01 also states that PREP Act immunity must be read in light of the PREP Act's broad, express preemption provision.[15] On **May 19, 2020**, HHS issued Advisory Opinion 20-02 emphasizing that the exclusive, broad federal remedies under the PREP Act preempt any state law claim.[16]

HHS then issued a letter on **August 14, 2020,** confirming that "senior living communities are 'covered persons' under the PREP Act when they provide a facility to administer or use a covered countermeasure."[17] The letter explains that a senior living community meets the definition of "program planner" when it "supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by 'provid[ing] a facility to administer or use

---

[14] Advisory Opinion on the PREP Act and the March 10, 2020 Declaration Under the Act, HHS (Apr. 17, 2020) (as modified on May 20, 2020) ("AO 20-01") available at: https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-april-14-2020.pdf. (*See* Exhibit B).

[15] Under § 247d-6d (b)(8)(A), (1) "no State or political subdivision of any State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, or is in conflict with, any requirement applicable under this section."

[16] HHS, Advisory Opinion 20-02 on the PREP Act and the Secretary's Declaration Under the Act (May 19, 2020) *available at*: https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/advisory-opinion-20-02-hhs-ogc-prep-act.pdf ("AO 20-02"). (*See* Exhibit C).

[17] Charrow, Robert, Letter to Thomas Baker, August 14, 2020. (*See* Exhibit D).

a Covered Countermeasure in accordance with' the Declaration." *Id.* The letter further acknowledges that a senior living community could also be a "qualified person" to the extent that it is authorized under Federal, State, or local law to engage in the countermeasure activities at issue. *Id.*, at note 3.

On **August 31, 2020**, HHS issued additional guidance[18] confirming immunity under the PREP Act to senior living communities which prescribe or administer COVID-19 tests.

On **October 22, 2020**, HHS issued Advisory Opinion 20-04, highlighting the breadth of PREP Act coverage to claims of non-use of covered countermeasures.[19] Specifically, AO 20-04 confirms that "use" and "administration" of countermeasures extend well beyond just physical distribution of tangible countermeasures. As HHS explains:

> 'Administration' also encompasses 'activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to the countermeasure activities.'[20]

AO 20-04. Consistent with this point, HHS rejected outright the holding of a previous case decision relied upon by many other courts, *Casablanca v. Mount Sinai Med. Ctr.,* 2014 WL 10413521 (N.Y. Sup. Ct. 2014), where the claimant argued that the PREP Act did not apply simply because the decedent failed to receive a covered countermeasure. HHS bluntly stated, "The court was wrong," emphasizing that "administration" is broader than physical provision of a covered countermeasure, and can also include decisions and actions related to those

---

[18] Office of the Assistant Secretary for Health, GUIDANCE FOR PREP ACT COVERAGE FOR COVID-19 SCREENING TESTS AT NURSING HOMES, ASSISTED LIVING FACILITIES, LONG-TERM-CARE FACILITIES, AND OTHER CONGREGATE FACILITIES, *available at* https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-coverage-for-screening-in-congregate-settings.pdf. (*See* Exhibit E).

[19] Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and The Secretary's Declaration Under the Act, HHS, (Oct. 22, 2020) ("AO 20-04"). (*See* Exhibit F).

[20] *Id.*

activities.[21]   Indeed, AO 20-04 stresses the breadth of the PREP Act's application to the "administration and use" of covered countermeasures, such as diagnostic testing and PPE, by "program planners."

On **January 8, 2021**, HHS issued Advisory Opinion 21-01, again confirming that the PREP Act is invoked by allegations similar to those in Plaintiffs' Complaint, such as alleged failure to act or inaction.[22]   Specifically, AO 21-01 states that the application of PREP Act immunity includes situations involving a conscious decision by a program planner, such as Defendants, *not* to use a covered countermeasure.  It further clarifies that "***decision-making that leads to the non-use of covered countermeasures*** by certain individuals is the gist of program planning, and is expressly covered under the PREP Act." *Id*. at 4. AO 21-01 also confirms that the PREP Act is a "Complete Preemption" statute, and is the basis for federal question removal.  AO 21-01 further reiterates what the Fourth Amendment had already addressed, that there are substantial legal and policy issues such that allegations invoking the PREP Act satisfy the *Grable* Doctrine such that federal jurisdiction must be conferred.[23]

Again, these Advisory Opinions are binding on this Court as HHS has incorporated all Advisory Opinions pertaining to COVID-19 into the PREP Act's implementing Declaration itself, and proclaimed that the Declaration "must" be construed in accordance with them.  *See* 85 Fed Reg. 79190.  As such, the HHS Advisory Opinions are no longer "advisory"; they now have the same "controlling weight" as the Declaration and the PREP Act itself.  And where Congress has expressly delegated interpretive authority to an agency, that agency's interpretative

---

[21]   HHS Advisory Opinion 20-04, https://www.hhs.gov/sites/default/files/advisory-opinion-20-04-hhs-ogc-publicreadiness-emergency-preparedness-act.pdf. (*See* Exhibit F).

[22] *See* Exhibit G.

[23] *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, <u>545 U.S. 308</u> (2005).

proclamations are controlling on the courts.  *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, <u>467 U.S. 837, 843-44</u> (1984).  Further, Congress has reinforced the Secretary's ultimate authority in the PREP Act itself, and warns that "[n]o court . . . shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under [the PREP Act]." <u>42 U.S.C. § 247d-6d(b)(1)</u>, <u>(4)</u> & <u>(7)</u>.

c.     <u><b>Judicial Opinions Addressing the Scope of the PREP Act</b></u>

Prior to the COVID-19 pandemic there were a limited number of opinions applying the PREP Act. *See Parker v. St. Lawrence Cty. Pub. Health Dep't*, <u>102 A.D.3d 140</u> (N.Y. App. Div. 2012) (dismissing claim of battery for non-consensual H1N1 vaccine administration due to lack of subject-matter jurisdiction in light of PREP Act preemption); *Kehler v. Hood*, No. 4:11CV1416 FRB, <u>2012 WL 1945952</u> (E.D. Mo. May 30, 2012) (dismissing third-party action against H1N1 vaccine manufacturer for lack of subject-matter jurisdiction); *Casablanca v. Mt. Sinai Med. Ctr.*, No. 112790/10, <u>2014 WL 10413521</u> (N.Y. Sup. 2014) (denying pre-trial motion to dismiss involving allegation of negligent non-administration of H1N1 vaccine).

Since the COVID-19 pandemic, several district court judges have considered the issue of whether removal jurisdiction exists over a claim involving negligent infection control within a senior living facility. Two of these courts have permitted removal jurisdiction over such claims. *See Garcia v. Welltower OpCo Group*, No. 8:20-cv-02250, <u>2021 WL 492581</u> (C.D.Ca Feb. 10, 2021); *Rachal v. Natchitoches Nursing & Rehab. Ctr.*, No. 1:21-cv-334 (W.D.L.A. Apr. 30, 2021).

In contrast, several courts have, for various reasons, declined to exercise removal jurisdiction over such claims. *See, e.g. Schuster v. Percheron Healthcare*, No. 4:21-cv-00156, <u>2021 WL 1222149</u> (N.D.Tx Apr. 1, 2021) (collecting cases). Some of these courts have held that the PREP Act should be litigated and decided in state court. *See, e.g.*, *Wright v. Encompass Health*

13

*Rehab. Hosp. of Columbia*, No. 3:20-02636, <u>2021 WL 1177440</u> (D.S.C. Mar. 29, 2021) (holding that the state court should determine whether the PREP Act applies); *Stone v. Long Beach Healthcare Ctr., LLC*, No. 21-326 (C.D.Cal. Mar. 26, 2021) (holding that the state court should determine whether the PREP Act applies); *Dupervil v. Alliance Health Ops.*, No. 1:20-cv-04042, <u>2021 WL 355137</u> (E.D.N.Y. Feb. 2, 2021). Some courts have either declined to follow HHS's pronouncement that the PREP Act applies to allegations of non-use and non-administration set forth in Advisory Opinion 21-01, or failed to address that authority, and concluded that the PREP Act does not apply to claims of negligent infection control within a facility. *See, e.g.*, *Smith v. Colonial Care Ctr.*, No. 2:21-cv-00494, <u>2021 WL 1087284</u> (C.D.Ca Mar. 19, 2021); *McCalebb v. AG Lynwood*, No. 2:20-cv-09746, <u>2021 WL 911951</u> (C.D. Cal Mar. 1, 2021) (referring to an incomplete version of the definition of "administration" to support the conclusion that the PREP Act would not cover claims of general neglect for failing to provide adequate PPE). Other decisions were issued before HHS issued its fourth amendment to the Declaration and Advisory Opinion 21-01 (in fact, these decisions prompted the latter authority). *See Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, <u>478 F. Supp. 3d 518</u> (D.N.J. 2020), (D.N.J. Aug. 12, 2020); *Brown v. Big Blue Healthcare*, <u>480 F.Supp.3d 1196</u>, (D.Ka 2020) (one of 12 related cases with identical decisions). Many of those decisions have been appealed.

Only a small number of courts have squarely confronted whether the PREP Act mandates dismissal of claims involving negligent infection control within a senior living facility. In *Garcia v. Welltower OpCo Group*, the court determined that such claims fall squarely under the PREP Act and granted dismissal with prejudice. <u>2021 WL 492581, 8-9</u> (C.D.Ca Feb. 10, 2021). It reasoned that the administration of an infection control program within a senior living facility, as required by state law, amounted to program planning, and therefore the plaintiff's claims of negligent

14

infection control fell under the PREP Act. *Id.* The court further observed that many of the allegations were similar to those discussed in Advisory Opinion 21-01. *Id.* Accordingly, the court dismissed the complaint for failure to state a claim. *Id.* at 10.

In contrast, the court in *Rachal v. Natchitoches Nursing & Rehab. Ctr.* held that it was premature to determine whether the plaintiffs' claims of negligent infection control related to covered countermeasures, and therefore denied a motion to dismiss with leave to renew after limited discovery. No. 1:21-cv-334 (W.D.L.A. Apr. 30, 2021). The court ordered a limited 90-day discovery window, which was to focus on the nature of the plaintiff's allegations. *See Rachal* Docket Report, Ex. H.

For the reasons below, this court should dismiss the Petition in the same manner as the *Garcia* court did. Plaintiffs' claims "relate to" Defendants' infection control procedures for COVID-19 and therefore fall under the PREP Act.

## 2.   PLAINTIFFS' CLAIMS ARE PREEMPTED AND BARRED BY PREP ACT IMMUNITY.

The PREP Act is not an ordinary affirmative defense—it confers absolute immunity. Specifically, it provides immunity "from suit" under state and federal law. 42 U.S.C. § 247d-6d(a)(1). Therefore, no legally cognizable claim can be asserted for any facts that would fall within the purview of the immunity it provides. *See Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140, 144 45 (N.Y. App. Div. 2012) ("plaintiff's state law claims for negligence and battery are preempted by the PREP Act and, inasmuch as the exclusive remedy under the statute is a federal cause of action to be brought in federal court, the complaint must be dismissed for lack of subject matter jurisdiction."). As such, if a complaint asserts facts that fall under the purview of the PREP Act, it must be dismissed for lack of subject-matter jurisdiction and failure to state a claim. *Id.*

15

Here, Plaintiffs' claims should be dismissed because Defendants are immune under the PREP Act and its implementing Declaration, as amended - even if Plaintiffs' Complaint does not expressly invoke the "PREP Act" by name.  Indeed, Section 247d-6d(b)(8) of the PREP Act titled, **"PREEMPTION OF STATE LAW**," provides:

> [N]o State…may establish, enforce or continue in effect with respect to a covered countermeasure **any provision of law** or legal requirement that (A) is different from, or is **in conflict with**, any requirement applicable under section; and (B) related to the…use, …dispensing, or administration by qualified persons of the covered countermeasure.

42 U.S.C. § 247d-6d(b)(8) (emphasis added).

As illustrated by both the plain language of the statute and its legislative history, the purpose of the PREP Act is to protect covered entities to ensure they will not cease operations for fear of protracted liability, and will instead plan for infection control, including the administration and use of countermeasures to stop the spread of COVID-19.   The plain language of the PREP Act mandates immunity from claims for losses that are precisely of the type brought in Plaintiffs' Petition.  As the Act expressly states: "[A] covered person *shall* be immune from suit and liability under Federal and State law with respect to claims for loss…" 42 U.S.C. § 247d-6d(b)(1) (emphasis added).  In using the mandatory language, "shall be immune from suit and liability under Federal and State law" the objective of immunity is clear. As individuals and entities are exposed to greater risk of liability when responding to a public health concern, a priority of the PREP Act was to remove such liability concerns so that resources would remain available during an emergency.   Moreover, since the onset of the ongoing COVID-19 pandemic, HHS has repeatedly insisted that the protections of the PREP Act are to be given "broad" applicability.  Simply stated, the Petition should be dismissed because Defendants are "covered persons" who engaged in "recommended activities" regarding the administration and use of "covered countermeasures" during the COVID-19 global pandemic and health emergency. As explained below, Defendants

16

and their alleged acts and omissions meet each of the elements outlined above, and are entitled to immunity under the PREP Act.

        a.      **The PREP Act applies because Defendants are "covered persons".**

The PREP Act provides immunity to "covered persons." Under the Declaration, that phrase is defined to include "'program planners,' 'qualified persons,' and their officials, agents, and employees"; any person "authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction … to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors"; "any person authorized to prescribe, administer, or dispense the Covered Countermeasures or who is otherwise authorized to perform an activity under an Emergency Use Authorization in accordance with Section 564 of the FD&C Act";  and "any person authorized to prescribe, administer, or dispense Covered Countermeasures in accordance with Section 564A of the FD&C Act." 85 Fed. Reg. at 15201-02.

The phrase "qualified person" has a broad definition that includes any "licensed health professional or other individual who is authorized to prescribe, administer, or dispense [covered] countermeasures under [applicable state law]"; any "person [so] authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction … and their officials, agents, employees, contractors and volunteers …"; and any person so-authorized under an "Emergency Use Authorization in accordance with Section 564 of the FD&C Act" or "in accordance with Section 564A of the FD&C Act." 42 U.S.C.A. § 247d-6d(i)(8).  The phrase "Authority Having Jurisdiction," in turn, means the "public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical (e.g., city, county, tribal, state, or federal boundary lines) or functional (e.g., law enforcement, public

health) range of sphere or authority." 85 Fed. Reg. at 15202. The term "distributor" is also broadly (and circuitously) defined as "a person or entity engaged in the distribution of drugs, biologics, or devices …." 42 U.S.C.A. § 247d-6d(i)(3).

> The PREP Act broadly defines a "program planner" as a person or entity who:
>
> supervised or ***administered a program with respect to the administration,*** dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, ***including a person who has established requirements***, provided policy guidance, or supplied technical or scientific advice or assistance or ***provides a facility to administer or use a covered countermeasure*** in accordance with [the Secretary's declaration].

42 U.S.C. § 247d-6d(i)(6) (emphasis applied).  The Preamble to the Declaration explains that a "private sector employer or community group or other 'person'" can be a program planner when it carries out the described activities." 85 Fed. Reg. at 15202.

Highland, as a licensed skilled nursing facility, and Hayes, as the administrator of Highland, are "program planners" because they supervised or administered a countermeasure use program, or provided a facility to administer or use countermeasures.  *See* 42 U.S.C. §247d-6d(i)(6) *see also* Exhibit D, HHS RESPONSE LETTER p. 1 (Aug. 14, 2020) (declaring senior living communities as "program planners" when they manage and operate a COVID-19 countermeasure plan and/or a COVID-19 countermeasure facility).

Importantly, program planners receive PREP Act immunity for decisions on whether and when to act (or not act), and even for omissions, such as delay in testing or treatment, or delay in countermeasure deployment.[24]  In other words, Plaintiffs cannot "plead around" immunity simply by inserting the word "failure."  If the decision *not* to provide certain care (even if true) is the decision, it is still protected under the PREP Act as a matter of law.  "There can potentially be

---

[24] *See id.* p. 7 (noting that certain "acts or omissions" remain immune from suit -- even within the exception for willful misconduct: "Under the PREP Act, immunity is broad. As a general matter, a covered person is immune from liability for all claims for loss…that proximately caused death or serious injury").

other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure." AO-21-01; 42 U.S.C. § 247d-6d(i)(6) (defining a program planner as "a person who has *established requirements*, *provided policy guidance*, or *supplied technical or scientific advice*.").

In short, a program planner is protected under the PREP Act with respect to all planning and decisions involving *how and when* countermeasures are to be used, even if that planning results in instances where countermeasures are withheld. Otherwise, the PREP Act would provide little protection because a plaintiff would simply allege one instance where a countermeasure was not used, or used improperly, in an effort to keep a suit alive. Further, if that were the case, providers would be incentivized to close their doors to avoid the risk of going out of business due to liability.

In this case, there should be no dispute that a skilled nursing facility (or a nursing and rehabilitation center), together with all of its employees, is a "covered person" under the PREP Act. As the OGC explained in the August 14, 2020 opinion letter: "senior living communities are 'covered persons' under the PREP Act when they provide a facility to administer or use a covered countermeasure in accordance with the Declaration.[25] The OGC further explained, "a senior living community meets the definition of a 'program planner' to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by 'provid[ing] a facility to administer or use a Covered Countermeasure in accordance with' the Declaration."[26]

---

[25] Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020).

[26] *Id.*

Here, Plaintiffs admit Highland is "a nursing and rehabilitation center," in the Petition. (Ex. A, ¶ 2.)  Highland and Hayes supervised and administered an infection control protocol using covered countermeasures, as examined in further detail below.  Accordingly, Highland and Hayes are "covered persons" because they are "qualified persons" for purposes of PREP Act immunity.

### b.    Plaintiffs Plead and Defendants were Engaged in Recommended Activities by Using or Administering "Covered Countermeasures"

Sections III and IV of the Declaration provide immunity for "recommended activities," which include the "use" or "administration" of "covered countermeasures." 85 Fed. Reg. at 15201. As set forth below, the term "countermeasures" is broadly defined to include any FDA-approved or cleared product that is used to combat COVID-19. Also, the phrase "administration" is broadly defined to extend to both the physical provision of countermeasures to recipients *and* all related decisions and activities, including management and operation of a facility for countermeasure use and distribution. Therefore, all of Defendants' systemic infection control activities taken against COVID-19 fall under the definition of "administration" because they relate to and are inextricably intertwined with the use and distribution of a variety of covered countermeasures.

Plaintiffs' allegations acknowledge that Defendants engaged in the administration or use of "covered countermeasures."  The PREP Act defines "covered countermeasures" to include, *inter alia*, "qualified pandemic or epidemic products," as well as "drugs, biological products or devices authorized for investigational or emergency use," or a "respiratory protective device." *See* 42 U.S.C. § 247d-6d(i)(1), (8). Further, under the Declaration, PREP Act immunity is extended for any covered countermeasure that is used "to treat, diagnose, cure, prevent, or mitigate COVID-19" or "to limit the harm that COVID-19 … might otherwise cause." 85 Fed. Reg. at 35102.

The phrase "use" is not defined under the PREP Act or the Declaration. However, the phrase "administration" is specifically defined within the Declaration itself, and that definition extends broadly beyond the direct physical provision of countermeasures to recipients:

> Administration … means physical provision of the countermeasures to recipients, or **activities and decisions** directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; **management and operation of countermeasure programs**; or **management and operation of locations** for purpose of distributing and dispensing countermeasures.

85 Fed. Reg. 15202 (emphasis supplied).

In the Preamble of the Declaration, the Secretary explains that this broad definition of "administration" even extends to "decisions" that are "related to" the management and operation of a countermeasure program or a location where countermeasures are being distributed:

> The definition of ''administration'' extends … to activities related to management and operation of programs and locations for providing countermeasures to recipients, ….
>
> Thus, it is the Secretary's interpretation that … **the Act precludes a liability claim relating to the management and operation of a countermeasure distribution program or site**, such as a **slip-and-fall injury** or **vehicle collision** by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, **lax security** or **chaotic crowd control.**

85 Fed. Reg. 15200 (emphasis supplied).

The Secretary has reiterated this broad definition of "administration" and "program planning" on several occasions.  *See* Fourth Amendment to the Declaration, 85 Fed Reg at 79194 ("there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act"); Advisory Opinion 20-04 at 7 (emphasizing the broad meaning of "related to" and rejecting the holding of *Casablanca v. Mount Sinai Med. Ctr.*, 2014 WL 10413521 (N.Y. Sup. Ct. 2014) that the PREP Act did not apply to a claim of failing to administer a covered countermeasure); Advisory Opinion 21-01 at 2-3 (stating that the PREP Act

"extends immunity to anything 'relating to' the administration of a covered countermeasure" and emphasizing that "decision making" is the essence of "program planning").

Here, the allegations of the Petition place into issue Defendants' systemic infection control measures taken in response to COVID-19. Such measures meet the broad definition of "administration" because they directly relate to the distribution of products such as PPE for infection control, relate to programs for ensuring that staff and employees are screened and tested for COVID-19, and also relate to the management and operation of the entire facility where such countermeasures are being systemically used and distributed to mitigate COVID-19.

### i.    Testing

COVID-19 tests plainly satisfy the definition of "covered countermeasure" because they are used to "diagnose" COVID-19 and are either authorized for emergency use of approved by the FDA.[27]  Here, the Petition contains allegations that relate to whether Defendants failed to "timely and properly monitor, detect symptoms, test, and diagnose Ms. Becknell for COVID-19…"  (*See* Exhibit A, ¶ 10(c)). The Petition further alleges that Ms. Becknell contracted and died of COVID- while at Highland, and that the death of Ms. Becknell was due to Defendants' "broken promises, grossly negligent actions, and inactions" and "administrative negligence".  (*See* Exhibit A, ¶¶ 9, 10, 14).   Thus, while the allegations in the Petition are vague and conclusory, they nevertheless implicate Defendants' administration of COVID-19 tests to diagnose residents with positive cases. Further, since identifying positive cases of COVID-19 within the facility is undoubtedly related to

---

[27]  FDA, In Vitro Diagnostics EUAs, available at: https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/in-vitro-diagnostics-euas (current list of COVID-19 tests subject to emergency use authorization); *see generally,* FDA, Coronavirus Disease 2019 (COVID-19) Emergency Use Authorizations for Medical Devices, available at: https://www.fda.gov/medical-devices/emergency-use-authorizations-medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices

infection control in general, Plaintiffs' vague allegations also place into issue the administration of COVID-19 tests to other residents, not just the named plaintiffs/decedents.

Therefore, even if Plaintiffs do not ultimately claim that the COVID-19 tests administered to Ms. Becknell were performed negligently or untimely, their claims of improper infection control nevertheless "relate to" and "arise out of" Defendants' administration of those tests more generally.

### ii.     Personal Protective Equipment

The various forms of PPE available to the public also meet the definition of "covered countermeasures." These devices are used to "prevent" COVID-19, and they are either approved by the FDA or authorized for emergency use. *See* 21 CFR §§ 878.4040 (surgical apparel), 880.6250 (non-powdered patient examination gloves), 880.6256 (examination gowns).[28] Similarly, all respiratory protective devices subject to NOISH certification, such as N-95 masks, are also "covered countermeasures."[29]

The allegations in Plaintiffs' Petition involve the use of PPE.  PPE was a key part of the guidance and directives provided by CMS and CDC to facilities like Highland to prevent the spread of COVID-19.[30] In fact, it is common knowledge that at the time of the allegations in the Petition PPE was one of the only lines of defense available to combat COVID-19.  Therefore, Plaintiff's broad allegations that Defendants' departures from the standard of care caused some of the subject

---

[28]  FDA    Combating    COVID-19   with   Medical    Devices,    FDA,   available   at: https://www.fda.gov/media/136702/download (listing Emergency Use Authorization for inter alia, COVID-19 test kits, certain types of PPE, respiratory protective devices, therapeutics, and drugs)

[29]  CDC,   NIOSH-Approved   Particulate   Filtering   Facepiece   Respirators,   available   at: https://www.cdc.gov/niosh/npptl/topics/respirators/disp_part/default.html

[30]  Examples  from  the  CDC  include:  Preparing  for  COVID-19  in  Nursing  Homes,  available  at https://www.cdc.gov/coronavirus/2019-ncov/hcp/long-term-care.html (last updated June 15, 2020) (recommending, inter alia, the use of face masks, testing, and hand sanitizer); Strategies to Optimize the Supply of PPE and Equipment, available at: https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/index html (last updated May 18, 2020); Using Personal Protective Equipment (PPE), available at: https://www.cdc.gov/coronavirus/2019-ncov/hcp/using-ppe html (last updated June 11, 2020).

residents to die from COVID-19 certainly implicate, and place into issue, Defendants' use, administration, and distribution of PPE within the facility. *See also* Exhibit G, Advisory Opinion 21-01, pp. 2-3 (discussing examples of allegations that trigger PREP Act immunity). The Petition further states there was "no vaccination" for COVID-19, and that the World Health Organization "urged healthcare facilities . . . to assess current supply of Personal Protective Equipment, and initiate measures to optimize supply . . ." (*See* Exhibit A, ¶¶ 5-6). The Petition further alleges Defendants "breached and/or ignored the guidelines and recommendations of the WHO . . ." *Id.* at ¶ 7. Numerous other statements in the Petition implicate defendants' administration and use of PPE. (*See id.* at ¶¶ 10, 14, alleging failure to "initiate an appropriate level of preventative actions, interventions and measures to prevent [Ms. Becknell's] exposure to and potential for contracting the virus", failure to "do all things necessary and proper in the circumstances to reduce the risk of Ms. Becknell being exposed to and contracting COVID-19", and failure to "follow and implement the guidelines and recommendations of the WHO"). Plaintiffs' claims certainly "relate to" and arise out of Defendants' use of administration and distribution of PPE.

### iii.   Thermometers, Pulse Oximeters, Hand Sanitizers, and   Other Medical Devices

Medical devices used to screen individuals for COVID-19, such as thermometers and pulse oximeters, also meet the definition of "covered countermeasures." These devices are all approved by the FDA and regulated. *See* 21 CFR §§ 880.2200, 880.2900, 880.2910, 880.2920, 880.2930 (thermometers); 21 C.F.R. § 870.2700 (Pulse oximeters). Hand sanitizers, i.e., "antiseptic products," are also approved by the FDA as "devices," and therefore also meet the definition of "covered countermeasures." *See* 82 Fed. Reg. 60474 (final rule for health care antiseptic products); 84 Fed. Reg. 14847 (final rule for consumer antiseptic products). Similarly, any medical devices used in the administration of oxygen are subject to FDA approval, and would meet the definition

24

of "covered countermeasure" if used to treat COVID-19 or any of the harms that COVID-19 "might otherwise cause." 21 C.F.R. §§ 870.4100, 868.5340, 868.5570 (non-rebreather masks and nasal cannulas for administration of supplemental oxygen).

The Petition expressly implicates Defendants' use of sanitizer products by alleging Defendants failed to "initiate proper protocols to sanitize defendant's facility . . ." (*See* Exhibit A, ¶ 10(j)). In addition, the screening of individuals for COVID-19 symptoms was a key part of the guidance and directives provided by CMS and CDC, as was the dispensation and use of hand sanitizer for hygiene.[31] Such screening activities would involve the use and administration of devices such as thermometers and pulse oximeters. Therefore, to the extent that Plaintiffs' Petition is construed to allege that Defendants' infection control efforts were below the standard of care, it places into issue the Defendants' screening of individuals for COVID-19, Defendants' hygiene policies with respect to hand sanitizers, and Defendants' use and administration of any other medical devices to respond to COVID-19. Thus again, Plaintiffs' claims "relate to" and "arise out of" Defendants' use of these medical devices.

### c.      Plaintiffs' Claims Relate to and Arise Out of the "Administration" or "Use" of "Covered Countermeasures" During the Effective Period of the Declaration.

The PREP Act provides immunity for "all claims for loss caused by, arising out of, relating to, or resulting from" the administration or use of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(1). It further states that immunity applies to any claim "that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal

---

[31] Examples from the CDC include: Preparing for COVID-19 in Nursing Homes, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/long-term-care.html (last updated June 15, 2020) (recommending, inter alia, the use of face masks, testing, and hand sanitizer); Strategies to Optimize the Supply of PPE and Equipment, available at: https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/index html (last updated May 18, 2020); Using Personal Protective Equipment (PPE), available at: https://www.cdc.gov/coronavirus/2019-ncov/hcp/using-ppe html (last updated June 11, 2020).

relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, **dispensing**, **prescribing**, **administration**, licensing, or **use** of such countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis added).

Under the Declaration, the term "administration" is broadly defined to extend beyond the physical provision of countermeasures to recipients:

> Administration … means physical provision of the countermeasures to recipients, or **activities and decisions** directly relating to public and private delivery, distribution and **dispensing of the countermeasures** to recipients, **management and operation of countermeasure programs**, or **management and operation of locations** for purpose of distributing and dispensing countermeasures.

85 Fed. Reg. 15202 (emphasis supplied).

The Declaration further explains that PREP Act immunity extends not only to claims alleging "negligence by a manufacturer in creating a vaccine" and "negligence by a health care provider in prescribing the wrong dose" but also to claims involving a "slip-and-fall injury or vehicle collision by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, lax security or chaotic crowd control." 85 Fed. Reg. 15200. However, it would not preclude a claim "alleging an injury occurring at [such a] site that was not directly related to the countermeasure activities … such as a slip and fall with no direct connection to the countermeasure's administration or use." *Id.*

Moreover, the PREP Act applies to acts *and omissions*. *See* 42 U.S.C.A. § 247d-6d(c)(1)(A) (willful misconduct exception applies to an "act or **omission**"). As AO 21-01 makes plain, because "decision making" is the essence of "program planning," the PREP Act "extends immunity to anything 'relating to' the administration of a covered countermeasure." This broad application of the PREP Act is consistent with the many authorities issued by HHS in response to

COVID-19. *See* Fourth Amendment to the Declaration, 85 Fed Reg at 79194 ("there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act"); Exhibit F, Advisory Opinion 20-04 at 7 (emphasizing the broad meaning of "related to" and rejecting the holding of *Casablanca v. Mount Sinai Med. Ctr.*, 2014 WL 10413521 (N.Y. Sup. Ct. 2014) that the PREP Act did not apply to a claim of failing to administer a covered countermeasure).

Notably, in *Garcia*, the Court granted the defendants' motion to dismiss and denied the plaintiff's motion to remand on the grounds that the PREP Act completely preempted plaintiff's claims -- ***even those alleging Defendants' failure to act***. *See Garcia*, supra.  In so doing, the court expressly affirmed that omissions or inaction, including "possible unsuccessful attempts at compliance with federal or state guidelines[,]" are sufficient to trigger the PREP Act. *See id.*  Thus, even to the extent Plaintiffs allege injuries as a result of Defendants' alleged inaction or omissions, such injuries "relate to the administration of a covered countermeasure" and trigger application of the PREP Act.

Here, like in *Garcia*, Plaintiffs' Petition clearly asserts a claim "arising out of, relating to, or resulting from" the administration and use of covered countermeasures. The broad allegations of negligence, "grossly negligent actions" and "broken promises", coupled with the allegations that Ms. Becknell contracted COVID-19, place directly into issue all "activities" that Defendants engaged in and "decisions" they made for the purposes of infection control. Therefore, the Defendants' "administration" of covered countermeasures, as well as their distribution and use of them, are central to the claims at issue. This includes a host of granular decisions essential for the "management and operation" of Highland, such as who gets what, where and when, and how

countermeasures are to be implemented. These granular decisions are not just at issue, they are the entire crux of Plaintiffs' claims that the Defendants engaged in negligent conduct.

Finally, it is beyond dispute that the Petition alleges conduct that occurred during the effective time period of the Declaration, which is from February 4, 2020 until October 24, 2020. 85 Fed. Reg. at 15201.

### d.   **Covered Countermeasures used in Skilled Nursing Facilities are Related to Federal Agreement and also Authorized by an Authority Having Jurisdiction under the Declaration.**

The initial Declaration provided that PREP Act immunity applies to activities involving covered countermeasures that are "related to" *either* of the following:

> (a) Present or future federal contracts, cooperative agreements, grants, other transactions, interagency agreements, memoranda of understanding, or other federal agreements; or

> (b) Activities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency.

85 Fed. Reg. at 15202. (This was subsequently amended to expand this criteria.)

HHS explained in Advisory Opinion 21-01 that this language should be construed broadly:

> We interpret these two conditions broadly to include (1) any arrangement with the federal government, or (2) any activity that is part of an authorized emergency response at the federal, regional, state, or local level. Such activities can be authorized through, among other things, guidance, requests for assistance, agreements, or other arrangements.

Exhibit G, Advisory Opinion 21-01.

With respect to the second option, the Declaration defined the phrase "Authority Having Jurisdiction" (herein, "AHJ") broadly to mean "the public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical (e.g., city, county, tribal, state, or federal boundary lines) or functional (e.g., law enforcement, public

health) range or sphere of authority." 85 Fed. Reg. at 15202. HHS has also explained that there can be many different AHJs, and that even HHS, CDC, and CMS are AHJs. *See* Sixth Amendment to the Declaration, 86 Fed. Reg. at 9520, N. 3 (providing examples of guidance documents issued from HHS as an AHJ); Seventh Amendment to the Declaration, 86 Fed. Reg at 14468, N. 4 (same); Exhibit E, HHS, Guidance for PREP Act Coverage for COVID-19 Screening Tests at Nursing Homes, Assisted-Living Facilities, Long-Term-Care Facilities, and other Congregate Facilities, Aug. 31, 2020 (addressing CMS and FDA guidance); Exhibit F, Advisory Opinion 20-04 at p. 4 (referring to the CDC as an AHJ). Certainly, state and local governments are also AHJs to the extent that they engage in a public health emergency response.

Here, there can be no dispute that the infection control measures at issue satisfy either, if not both, of the above criteria. First, as the subject facility is a federally-regulated skilled nursing facility, its infection control measures are undeniably related to an "arrangement with" the federal government. *See* 42 CFR Part 483 (Requirements for States and Long Term Care Facilities). Second, there can be no doubt that the distribution, administration, and use of covered countermeasures was authorized in accordance with the public health and medical response of the State of Louisiana. On March 11, 2020, Governor Jon Bel Edwards issued Proclamation No. 25 JBE 2020 declaring a state of public health emergency due to the COVID-19 pandemic, which is still in effect to this day.

**C.    PLAINTIFFS FAILED TO EXHAUST ALL ADMINISTRATIVE REMEDIES UNDER THE PREP ACT.**

Plaintiffs' claims must also be dismissed due to a failure to exhaust administrative remedies available under 42 U.S.C.A. § 247d-6e.  The failure to exhaust administrative remedies when exhaustion is required by statute has been held to deprive the court of subject matter jurisdiction for purposes of a motion to dismiss brought under F.R.C.P. Rule 12(b)(1). *See, e.g., Adams v. U.S.*

*Capitol Police Bd.*, 564 F.Supp. 2d 37, 40 (D.D.C. 2008) (failure to exhaust goes to subject matter jurisdiction, and plaintiff has the burden of persuasion); Wright & Miller, 5B Fed. Prac. & Proc. § 1350, Note 5 (3d ed.) (collecting cases). Moreover, where exhaustion is required by statute, there is no room for judicial discretion if a claimant fails to satisfy the statutorily proscribed exhaustion protocols. *Ross v Blake*, 136 S.Ct. 1850, 1857 (2016).

When exhaustion is not required by statute, it has been held that the failure to exhaust administrative remedies is not a jurisdictional prerequisite, but rather a failure to state a claim, and that a motion to dismiss on that ground should be considered under Rule 12(b)(6). *See, e.g., Fernandez-Vargas v. Pfizer Pharm., Inc.*, 394 F.Supp 2d 407, 411 (D.P.R. 2005) (noting disagreement among courts generally); Wright & Miller, 5B Fed. Prac. & Proc. § 1350, Note 6 (3d ed.) (collecting cases). Alternatively, dismissal for failure to exhaust can be considered an exercise of judicial discretion for the dual purposes of "protecting administrative agency authority and promoting judicial efficiency." *See, e.g., McCarthy v Madigan*, 503 U.S. 140, 145 (1992) (abrogated by statute on other grounds); *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 176 (1st Cir 2016) (exhaustion will create "a useful record for subsequent judicial consideration, especially in a complex or technical factual context").

With respect to a claim for "willful misconduct," the PREP Act expressly states that a plaintiff must first apply for benefits under the Fund before bringing the claim in court. 42 U.S.C.A. § 247d-6e(d)(1). *See also Parker v. St. Lawrence County Public Health Dept.*, 102 A.D.3d 140 (App. Div. 3d. 2012). Thus, since exhaustion is explicitly required by statute, the failure to exhaust deprives the Court of subject-matter jurisdiction over claims for "willful misconduct."

30

With respect to all other claims falling under the purview of the PREP Act, the exclusive administrative remedy is to submit a claim for benefits under the Covered Countermeasure Process Fund pursuant to 42 U.S.C.A. § 247d-6e. In such instances, eligibility for compensation will depend on whether the claimant is a "covered individual" (i.e., an individual who receives or uses a "covered countermeasure" within the meaning of the Secretary's declaration) and whether they sustained death or serious injury as a direct result of the use or administration of a "covered countermeasure," under procedures promulgated by the Secretary. *Id*. § 247d-6e(a), (b)(4), (e). Thus, the question of entitlement to administrative benefits is closely related to, but not identical to, the question of whether immunity applies in the first instance.

Here, Plaintiffs have not applied for benefits under 42 U.S.C.A. § 247d-6e(d)(1). Therefore, Plaintiffs' claim must be dismissed for lack of subject-matter jurisdiction and/or failure to state a claim under Rule 12(b)(6) due to Plaintiff's failure to exhaust administrative remedies as required by the PREP Act.

### D.   ANY CLAIM ALLEGEDLY ARISING FROM AN EXCEPTION TO PREP IMMUNITY MUST BE DISMISSED FOR LACK OF JURISDICTION.

As briefly stated above, if this Court finds that Defendants are not immune from certain alleged acts and omissions in the Petition, there is only one course of action available to Plaintiffs – a willful misconduct claim under the PREP Act.  "Under the PREP Act, the ***sole exception*** to the immunity from suit and liability of covered persons is an ***exclusive federal cause of action*** against a covered person for death or serious physical injury proximately caused by willful misconduct by such covered person." 85 Fed. Reg. 79190.  (emphasis added).

Such a claim is not specifically alleged in the Petition. However, even if it were, this Court lacks jurisdiction to address it. ***Under the PREP Act, a claim for willful misconduct can only be brought and maintained in the District Court for the District of Columbia. 42 U.S.C. § 247d-***

***6d(e)(1).***   Also, Plaintiffs must first pursue administrative remedies through the federal "emergency fund" designated for eligible individuals with covered injuries. 42 U.S.C. § 247d-6(e)(a). Moreover, once in the District of Columbia, Plaintiffs must meet special pleading requirements and are subject to certain rules of procedure specified under the PREP Act. *See* 42 U.S.C. §§ 247d-6d(c)(4), (d), (e).

Therefore, to the extent that Plaintiffs pursue an exception to PREP Act immunity, the claim must be dismissed for lack of subject-matter jurisdiction. Otherwise, Defendants would be deprived of the proper forum, special procedural protections, and strict pleading standards that they are entitled to under the PREP Act.

## E.   PLAINTIFFS' CLAIMS ARE BARRED BY IMMUNITY PER THE LHEPA

On March 11, 2020, Governor John Bel Edwards issued Proclamation No. 25 JBE 2020 declaring a public health emergency due to the COVID-19 pandemic pursuant to the Louisiana Health Emergency Powers Act (LHEPA).[32]  This Proclamation remains in effect to this day and was in effect on the date of the alleged negligence herein.  The LHEPA confers upon the Governor emergency powers to deal with public health emergencies.

Specifically, Louisiana Revised Statute 29:771(B)(2)(c)(i) provides that "[d]uring a state of public health emergency, ***no*** health care provider ***shall*** be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct."  (Emphasis added). The LHEPA does not provide for a limited set of health care providers, nor does it limit its application to only those medical personnel rendering emergency assistance voluntarily due to the emergency in the area."  *See Lejeune v. Steck*, 13-1017 (La. App. 5 Cir. 5/21/14), 138 So. 3d 1280, 1283.  A skilled nursing facility and its employees easily fit under

---

[32] *See* Ex. I, Proclamation No. 25 JBE 2020

32

the definition of a "health care provider" pursuant to the LHEPA.[33]  Since the plaintiffs' claims are against a health care provider during a state of public health emergency, defendants are entitled to immunity.  La. R.S. 29:771(2)(c)(i).

**F.**      **IF THE COURT DETERMINES THAT IT IS NECESSARY TO RESOLVE ISSUES OF FACT TO DECIDE THE MOTION, DEFENDANTS REQUEST A HEARING UNDER F.R.C.P. RULE 12(i)**.

F.R.C.P. Rule 12(i) permits a party bringing a motion under Rule 12(b)(1)-(7) or Rule 12(c) to request that the defenses invoked be "heard and decided before trial unless the court orders a deferral until trial."  In determining whether to decide the issues before trial or to defer, Courts "must balance the need to test the sufficiency of the defense or objection, the right of a party to have his defense or objection decided promptly and thereby possibly avoid costly and protracted litigation, against such factors as the expense and delay the hearing may cause, the difficulty or likelihood of arriving at a meaningful result of the question presented by the motion at the hearing, and the possibility that the issue to be decided on the hearing is so interwoven with the merits of the case … that a postponement until trial is desirable." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1373, Notes 11-15 (3d ed.).  Rule 12(i) hearings have been held to be appropriate for dismissal of subject-matter jurisdiction, failure to exhaust, and choice of venue. *Spector v. L Q Motor Inns, Inc.*, 517 F2d 278 (5th Cir. 1975); *Pavey v. Conley*, 544 F3d 739, 742 (7th Cir 2008), *as amended on denial of reh and reh en banc* (Sept. 12, 2008); and *Ryan v. Glenn*, 336 F.Supp. 555 (D.C.Miss.1971).

Here, Defendants request that the motion be heard and decided before trial due to the significant preservation of resources that would result, because it implicates subject-matter

---

[33] "Health care provider" means "a clinic, person, corporation, facility, or institution which provides health care or professional services by a physician, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, psychologist, or psychiatrist, and any officer, employee, or agent thereof acting in the course and scope of his service of employment."  La.R.S. 29:762(4).

jurisdiction, and because Plaintiffs have an alternate administrative remedy available. Thus, to the extent that the Court declines to decide the motion on the papers alone, an evidentiary hearing is required to determine the applicability of PREP Act immunity.

**G.**     **IF THIS CASE IS NOT DISMISSED, DISCOVERY SHOULD BE LIMITED TO WHETHER PLAINTIFFS' COMPLAINT ASSERTS A CLAIM FALLING WITHIN THE PREP ACT**

The Supreme Court has explained that a defense involving immunity "from suit" should be decided as early as possible in litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). As such, instead of granting dismissal under the PREP Act, the *Rachal* court ordered the parties to engage in limited discovery, and directed that they submit briefing at the conclusion of the same as to whether the PREP Act applied to the claims. *See* Exhibit H.

Therefore, to the extent that this court declines to issue an order of dismissal at this stage of the proceedings, Defendants request that this Court follow the approach of the *Rachal* court and order that discovery be initially limited to the sole issue of whether Plaintiffs' Petition asserts a claim falling within the PREP Act.

**H.**     **IF THIS CASE IS NOT DISMISSED AND LIMITED DISCOVERY IS NOT ISSUED, DEFENDANTS SHOULD BE PERMITTED TO SEEK DISMISSAL BY MOTION UPON THE CONCLUSION OF DISCOVERY**

Defendants respectfully request that if this Court should decline to issue dismissal and also decline to order limited discovery, that they be afforded the opportunity to renew their request for dismissal upon the conclusion of discovery.

The PREP Act was a rarely litigated statute before the COVID-19 pandemic, and cases involving its interpretation in the wake of COVID-19 are just now starting to make their way through the judicial system. Until appellate authority is issued, Defendants seeking to invoke the PREP Act to obtain a dismissal will be confronted by a variety of unresolved issues of law and

34

procedure, many of which are the very subject of this Motion. Notwithstanding, a defendant seeking to invoke the "immunity from suit" conferred by the PREP Act runs the risk of forfeiting a practical benefit of such immunity by waiting to assert it until after an extensive discovery period is complete.  Accordingly, Defendants submit that any denial of their Motion should be made without prejudice for Defendants to renew a request for dismissal upon the conclusion of discovery, whether by renewed Motion to Dismiss or by Motion for Summary Judgment.

## I.     <u>ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE ARBITRATED.</u>

If Plaintiffs' Petition is not dismissed for the reasons stated above, Defendants submit that Plaintiffs' claims should, in the alternative, be compelled to arbitration, and this action should be dismissed in its entirety or stayed pending arbitration.  As noted above, Archie Diggs, one of the plaintiffs in this matter and the legal representative of Ms. Becknell, signed an Arbitration Agreement on Ms. Becknell's behalf.  (Ex. J).  The Arbitration Agreement establishes that "any legal dispute, controversy, demand or claim . . . that arises out of or relates to the Admission Agreement *or any service or health care provided by the Facility to the Resident[34], shall be resolved exclusively by binding arbitration . . . and not by a lawsuit or resort to court processes* . . . ."  *Id.* (emphasis added).  The Arbitration Agreement expressly includes any claim of "negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical or health care or safety . . . ."  *Id.*   The Arbitration Agreement applies to Plaintiffs, since it "shall inure to the benefit of an[d] bind the parties, their successors and assigns, intended and incidental beneficiaries, agents, officers, directors, affiliates, employees and servants of the Healthcare Facility, and all persons whose claim is derived through or on behalf of the Resident, including that of any parent, spouse, child, guardian, executor, administrator, legal

---

[34] "Resident" is defined as Annie Becknell in the Arbitration Agreement.  (Ex. J).

representative, or heir or survivor of the Resident." *Id.*  The Arbitration Agreement also provides that it shall be governed by and enforced under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16.  *Id.*  Notwithstanding the existence of the Arbitration Agreement, Plaintiffs filed the Petition without initiating arbitration, as required by the Arbitration Agreement.

Both Louisiana and federal law favor arbitration agreements.  Louisiana law establishes that a provision "in any written contract to settle by arbitration a controversy thereafter arising out of the contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  La. R.S. 9:4201.  The Louisiana Civil Code further affirms the validity of arbitration provisions.  *See* La. C.C. art. 3099, *et seq*.  "There is a strong presumption in favor of arbitration." *Prasad v. Bullard*, 10-291 (La. App. 5 Cir. 10/12/10), 51 So. 3d 35, 39 (citing *Aguillard v. Auction Management Corp.*, 04–2804, pp. 24–25 (La.6/29/05), 908 So.2d 1, 18). "The Louisiana Supreme Court has stated that 'even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration.'"  *Id.* (citing *Aguillard*, 04–2804 at 25, 908 So.2d at 18). The Louisiana Binding Arbitration Law is virtually identical to the Federal Arbitration Act.  *See id.*

The FAA provides that an arbitration agreement in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This provision establishes 'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language

36

itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, <u>460 U.S. at 24-25</u>.   A party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Alabama v. Randolph*, <u>531 U.S. 79, 91-92</u> (2000).  To show that the validity of the arbitration agreement is in issue, the party resisting arbitration must show a genuine issue of material fact as to the validity of the agreement. *Great Earth Cos. v. Simons*, <u>288 F.3d 878, 889</u> (6th Cir. 2002).  This showing "mirrors that required to withstand summary judgment." *Id.*

From the face of the Petition, it is clear that Plaintiffs' claims relate to "any service or health care provided" by Highland to Ms. Becknell.  Further, as noted above, the Arbitration Agreement applies to Plaintiffs themselves.

In light of the foregoing, this Court should alternatively enforce the Arbitration Agreement, stay this action, and compel arbitration of the Plaintiffs' claims.  In the event that any one claim is not compelled to arbitration, Defendants request a stay of any such claim pending arbitration of the arbitrable claims.  Such relief is requested in the alternative to Defendants' Motion to Dismiss on the grounds of PREP Act immunity, *supra*.

## IV.   **CONCLUSION**

Based on the above, Defendants are entitled to all the protections afforded by the PREP Act and the LHEPA.  Accordingly, Plaintiffs' claims against Defendants should be dismissed pursuant to the PREP Act and LHEPA.  Alternatively, this Court should compel arbitration.

Respectfully submitted,

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By: _____/s/Sarah Spruill Couvillon_____
        Brandon A. Sues (LA Bar #25517)
        Sarah Spruill Couvillon (LA Bar #30185)
        Connor C. Headrick (LA Bar #38265)
        2001 MacArthur Drive
        P. O. Box 6118
        Alexandria, LA  71307-6118
        Telephone: (318) 445-6471
        Facsimile: (318) 445-6476

**ATTORNEYS FOR DEFENDANTS, IRVING PLACE ASSOCIATES, LP D/B/A HIGHLAND PLACE REHAB & NURSING CENTER AND ANGELA HAYES**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 28th day of July 2021, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system which will send notice of electronic filing to all known counsel of record who are participants.

<u>/s/ Sarah Spruill Couvillon</u>
Sarah Spruill Couvillon

38